## UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT
## CIVIL APPEAL PRE-ARGUMENT STATEMENT (FORM C)

**1. SEE NOTICE ON REVERSE**          **2. PLEASE TYPE OR PRINT**          **3. STAPLE ALL ADDITIONAL PAGES**

| Case Caption: | District Court or Agency: | Judge: |
|---|---|---|
| NOW-CASTING ECONOMICS, LTD. v. ECONOMIC ALCHEMY, LLC | S.D.N.Y. | John P. Cronan |

| | Date the Order or Judgment Appealed from was Entered on the Docket: | District Court Docket No.: |
|---|---|---|
| | May 30, 2023 | 18-cv-02442 |

| | Date the Notice of Appeal was Filed: | Is this a Cross Appeal? |
|---|---|---|
| | June 21, 2023 | ☐ Yes   ☑ No |

**Attorney(s) for Appellant(s):**
☐ Plaintiff
☑ Defendant

Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:

Ronald D. Coleman | 50 Park Pl., Newark NJ | 973-298-1723 rcoleman@dhillonlaw.com

**Attorney(s) for Appellee(s):**
☑ Plaintiff
☐ Defendant

Counsel's Name:     Address:     Telephone No.:     Fax No.:     E-mail:

Kyle C. Bisceglie | 1325 Ave. of the Americas | New York, NY kbisceglie@olshanlaw.com

| Has Transcript Been Prepared? | Approx. Number of Transcript Pages: | Number of Exhibits Appended to Transcript: | Has this matter been before this Circuit previously?  ☐ Yes  ☑ No |
|---|---|---|---|
| No | N/A | | If Yes, provide the following:<br><br>Case Name:<br><br>2d Cir. Docket No.:          Reporter Citation: (i.e., F.3d or Fed. App.) |

**ADDENDUM "A":** COUNSEL MUST ATTACH TO THIS FORM: (1) A BRIEF, BUT NOT PERFUNCTORY, DESCRIPTION OF THE NATURE OF THE ACTION; (2) THE RESULT BELOW; (3) A COPY OF THE NOTICE OF APPEAL AND A CURRENT COPY OF THE LOWER COURT DOCKET SHEET; AND (4) A COPY OF ALL RELEVANT OPINIONS/ORDERS FORMING THE BASIS FOR THIS APPEAL, INCLUDING TRANSCRIPTS OF ORDERS ISSUED FROM THE BENCH OR IN CHAMBERS.

**ADDENDUM "B":** COUNSEL MUST ATTACH TO THIS FORM A LIST OF THE ISSUES PROPOSED TO BE RAISED ON APPEAL, AS WELL AS THE APPLICABLE APPELLATE STANDARD OF REVIEW FOR EACH PROPOSED ISSUE.

### PART A: JURISDICTION

| 1. Federal Jurisdiction | | 2. Appellate Jurisdiction | |
|---|---|---|---|
| ☐ U.S. a party | ☐ Diversity | ☐ Final Decision | ☐ Order Certified by District Judge (i.e., Fed. R. Civ. P. 54(b)) |
| ☑ Federal question (U.S. not a party) | ☐ Other (specify): _____ | ☐ Interlocutory Decision Appealable As of Right | ☐ Other (specify): _____ |

**IMPORTANT. COMPLETE AND SIGN REVERSE SIDE OF THIS FORM.**

**FORM C** (Rev. October 2016)

## PART B: DISTRICT COURT DISPOSITION (Check as many as apply)

**1. Stage of Proceedings**

- [ ] Pre-trial
- [ ] During trial
- [ ] After trial

**2. Type of Judgment/Order Appealed**

- [ ] Default judgment
- [ ] Dismissal/FRCP 12(b)(1) lack of subject matter juris.
- [ ] Dismissal/FRCP 12(b)(6) failure to state a claim
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) frivolous complaint
- [ ] Dismissal/28 U.S.C. § 1915(e)(2) other dismissal

- [ ] Dismissal/other jurisdiction
- [ ] Dismissal/merit
- [ ] Judgment / Decision of the Court
- [x] Summary judgment
- [ ] Declaratory judgment
- [ ] Jury verdict
- [ ] Judgment NOV
- [ ] Directed verdict
- [ ] Other (specify):

**3. Relief**

- [ ] Damages:
  - [ ] Sought: $ _____
  - [ ] Granted: $ _____
  - [ ] Denied: $ _____

- [ ] Injunctions:
  - [ ] Preliminary
  - [ ] Permanent
  - [ ] Denied

Declaratory

## PART C: NATURE OF SUIT (Check as many as apply)

**1. Federal Statutes**

- [ ] Antitrust
- [ ] Bankruptcy
- [ ] Banks/Banking
- [ ] Civil Rights
- [ ] Commerce
- [ ] Energy
- [ ] Commodities
- [ ] Other (specify): _____
- [ ] Communications
- [ ] Consumer Protection
- [ ] Copyright ☐ Patent
- [x] Trademark
- [ ] Election
- [ ] Soc. Security
- [ ] Environmental
- [ ] Freedom of Information Act
- [ ] Immigration
- [ ] Labor
- [ ] OSHA
- [ ] Securities
- [ ] Tax

**2. Torts**

- [ ] Admiralty/ Maritime
- [ ] Assault / Defamation
- [ ] FELA
- [ ] Products Liability
- [ ] Other (Specify):

**3. Contracts**

- [ ] Admiralty/ Maritime
- [ ] Arbitration
- [ ] Commercial
- [ ] Employment
- [ ] Insurance
- [ ] Negotiable Instruments
- [ ] Other Specify

**4. Prisoner Petitions**

- [ ] Civil Rights
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Parole
- [ ] Vacate Sentence
- [ ] Other

**5. Other**

- [ ] Hague Int'l Child Custody Conv.
- [ ] Forfeiture/Penalty
- [ ] Real Property
- [ ] Treaty (specify): _____
- [ ] Other (specify): _____

**6. General**

- [ ] Arbitration
- [ ] Attorney Disqualification
- [ ] Class Action
- [ ] Counsel Fees
- [ ] Shareholder Derivative
- [ ] Transfer

**7.** Will appeal raise constitutional issue(s)?

- [ ] Yes [x] No

Will appeal raise a matter of first impression?

- [ ] Yes [x] No

1. Is any matter relative to this appeal still pending below? [ ] Yes, specify: _____ [x] No

2. To your knowledge, is there any case presently pending or about to be brought before this Court or another court or administrative agency which:

   (A) Arises from substantially the same case or controversy as this appeal? [x] Yes [ ] No

   (B) Involves an issue that is substantially similar or related to an issue in this appeal? [x] Yes [ ] No

If yes, state whether ☐ "A," or ☐ "B," or ☐ both are applicable, and provide in the spaces below the following information on the *other* action(s):

| Case Name:<br>(Same) | Docket No.<br>91266676 | Citation: | Court or Agency:<br>TTAB |
|---|---|---|---|

Name of Appellant: Economic Alchemy LLC

| Date: July 5, 2023 | Signature of Counsel of Record: *Donald O. Clewan* |
|---|---|

## NOTICE TO COUNSEL

**Once you have filed your Notice of Appeal with the District Court or the Tax Court, you have only 14 days in which to complete the following important steps:**

1. Complete this Civil Appeal Pre-Argument Statement (Form C); serve it upon all parties, and file it with the Clerk of the Second Circuit in accordance with LR 25.1.
2. File the Court of Appeals Transcript Information/Civil Appeal Form (Form D) with the Clerk of the Second Circuit in accordance with LR 25.1.
3. Pay the $505 docketing fee to the United States District Court or the $500 docketing fee to the United States Tax Court unless you are authorized to prosecute the appeal without payment.

**PLEASE NOTE: IF YOU DO NOT COMPLY WITH THESE REQUIREMENTS WITHIN 14 DAYS, YOUR APPEAL WILL BE DISMISSED.** *SEE* LOCAL RULE 12.1.

**FORM C** (Rev. December 2016)

**ADDENDUM A**

**(1) The Nature of the Action**

This case involves a dispute over trademarks. In 2016, defendant-appellant Economic Alchemy LLC ("EA") sent plaintiff-appellee Now-Casting Economics, Ltd. ("Now-Casting") a cease-and-desist letter accusing Now-Casting of infringing two of EA's registered trademarks: "NOWCAST", Registration No. 4,341,813 and "NOW-CAST", Registration No. 4,341,813 (the "Disputed Terms"). Plaintiff-appellee filed this action seeking a declaration that defendant-appellant's trademark NOWCASTING (and related variants) was (a) generic or (b), in the alternative, that if it were protectible that plaintiff had superior rights in the mark. The dispute was already the subject of a pending petition to cancel defendant's then-registered mark in the TTAB brought by plaintiff as well as an identical petition filed by a group of Federal Reserve banks.

Plaintiff Now-Casting then sued EA seeking a declaration that its use of the Disputed Terms does not infringe EA's trademarks, an order directing the USPTO to cancel those trademarks, and a permanent injunction restraining EA's interference with Now-Casting's use of the Disputed Terms. EA filed counterclaims alleging trademark infringement, and also naming a group of Federal Reserve banks as third-party defendants based on their pending TTAB cancellation petition.

**(2) The Result Below**

On motion by the Federal Reserve banks, the district court dismissed the third-party complaint against the banks on jurisdictional grounds.

In 2020, the USPTO cancelled EA's trademark registrations on administrative grounds. The case proceeded to litigation between the original two parties, each of which filed cross-motions for summary judgment. The district court denied appellant's motion and granted appellee's motion for a declaration of non-infringement.

*Sections (3) and (4) of this Addendum A are attached hereto.*

**ADDENDUM B**

• Whether the district court properly dismissed the third-party complaint against the Federal Reserve banks on jurisdictional ground
• Whether the district court erred in disregarding appellant's citation to the complaint in its 56.1 Statement
• Whether the district court erroneously overlooked material evidence of disputed facts in the summary judgment record in making its findings of fact
• Whether the district court erroneously ruled that appellant failed to show the existence of at least a serious fact question as to the distinctiveness of the trademarks at issue

Ronald D. Coleman
DHILLON LAW GROUP, INC.
50 Park Place, Suite 1105
Newark, NJ 07102
973-298-1723
rcoleman@dhillonlaw.com
*Attorneys for Defendant / Counterclaim Plaintiff*
*Economic Alchemy LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NOW-CASTING ECONOMICS, LTD., <br><br> *Plaintiff,* <br><br> -*v.*- <br><br> ECONOMIC ALCHEMY LLC, <br><br> *Defendant*. | No. 18-cv-02442 (JPC-SLC) <br><br> **NOTICE OF APPEAL** |

Defendant / Counterclaim Plaintiff Economic Alchemy LLC appeals to the United States Court of Appeals for the Second Circuit from the final judgment entered on May 30, 2023 denying Economic Alchemy LLC's motion for reconsideration of the Court's order granting summary judgment dated September 15, 2022; from the judgment and order granting summary judgment dated September 15, 2022; and from the order dismissing the third-party complaint dated September 24, 2019.

DHILLON LAW GROUP, INC.

By: _____
        Ronald D. Coleman

DHILLON LAW GROUP, INC.
50 Park Place, Suite 1105
Newark, NJ 07102
973-298-1723

rcoleman@dhillonlaw.com
*Attorneys for Defendant / Counterclaim Plaintiff*
*Economic Alchemy LLC*

Dated: June 21, 2023

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NOW-CASTING ECONOMICS, LTD.,

                              Plaintiff,

- against -

ECONOMIC ALCHEMY LLC,

                              Defendant.

---

ECONOMIC ALCHEMY LLC,

                              Counterclaim Plaintiff ,

- against -

NOW-CASTING ECONOMICS, LTD.,

                              Counterclaim Defendant.

---

ECONOMIC ALCHEMY LLC,

                              Third-Party Plaintiff,

- against -

FEDERAL RESERVE BANK OF ATLANTA,
FEDERAL RESERVE BANK OF CHICAGO,
FEDERAL RESERVE BANK OF BOSTON,
FEDERAL RESERVE BANK OF MINNEAPOLIS,
FEDERAL RESERVE BANK OF ST. LOUIS,
FEDERAL RESERVE BANK OF CLEVELAND,
FEDERAL RESERVE BANK OF PHILADELPHIA,
FEDERAL RESERVE BANK OF RICHMOND,
FEDERAL RESERVE BANK OF DALLAS,
FEDERAL RESERVE BANK OF NEW YORK,
FEDERAL RESERVE BANK OF KANSAS CITY,
FEDERAL RESERVE BANK OF SAN FRANCISCO,
and THE BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM,

                              Third-Party Defendants.

---

**Opinion and Order**
**18 Civ. 2442 (ER)**

EDGARDO RAMOS, United States District Judge:

Now-Casting Economics, Ltd. ("Now-Casting" or "Plaintiff") brought this action pursuant to the Lanham Act, 15 U.S.C. § 1051 *et seq.*; 28 U.S.C. § 1331; and the Declaratory Judgment Act, 25 U.S.C. § 2201. Defendant is Economic Alchemy LLC ("Economic Alchemy" or "Defendant"), a financial technology company, with trademarks for the contested terms "nowcast," "nowcasting," and derivations thereof. Now-Casting alleges that its use of the contested name and the terms at issue does not infringe on Defendant's intellectual property rights because they are generic and merely descriptive. Economic Alchemy brought counterclaims against Now-Casting and joined twelve federal reserve banks[1] and the board of governors for the federal reserve as third-party defendants. For the reasons set forth below, Now-Casting's motion for judgment on the pleadings is DENIED, and the third-party defendants' motion to dismiss is GRANTED with prejudice.

## BACKGROUND

Now-Casting is a specialist economic prediction and forecasting business that publishes economic forecasting data from an automated platform. Doc. 1, ¶ 8. Now-Casting's founders Domenico Giannone ("Giannone") and Lucrezia Reichlin ("Reichlin") designed a nowcasting model, which is an advanced statistical model that forms the core of their business. *Id.* Their work with developing the nowcasting model has been recorded in papers as early as 2005. *Id.* Now-Casting was formed in 2010 and began using the name "Now-Casting Economics Ltd." in the United States since at least May 2011. *Id.* ¶ 9. In the economics context, "nowcast"

---

[1] Federal Reserve Bank of St. Louis, the Federal Reserve Bank of Atlanta, the Federal Reserve Bank of Chicago, the Federal Reserve Bank of Minneapolis, the Federal Reserve Bank of Boston, the Federal Reserve Bank of New York, the Federal Reserve Bank of Philadelphia, the Federal Reserve Bank of Cleveland, the Federal Reserve Bank of Richmond, the Federal Reserve Bank of Dallas, the Federal Reserve Bank of San Francisco and the Federal Reserve Bank of Kansas City (collectively, "the Federal Banks" or "Banks").

describes a model for the prediction of economic conditions, like gross domestic product ("GDP") growth, in the present or near future.[2]  *Id.* ¶ 10.

Economic Alchemy is in the business of economic prediction and uses technology to create its own nowcasts and perform nowcasting analysis for others.  *Id.* ¶ 15.  Now-Casting asserts that while Economic Alchemy may have developed their own formulas, algorithms, and technology for producing nowcasts, they were not the first economic predictors to use the term. *Id.*  On May 13, 2013, Economic Alchemy obtained a trademark registration for "NOW-CAST" in Class 35, *id.* ¶ 17, and on May 28, 2013, a registration for "NOWCAST" in Class 35 (collectively, "Challenged Marks"), *id.* ¶ 16.  Economic Alchemy describes the registrations as encompassing economic predicting and forecasting and a method of providing predictions or estimates of present or near-present economic or financial conditions.  *Id.* ¶ 19.  They claim a first use date in the United States commerce stream of January 25, 2012, and a first use date anywhere of November 27, 2011.  *Id.* ¶ 18.  Dr. Giselle Guzman ("Dr. Guzman"), Economic Alchemy's principal, has written articles using the terms "nowcast" and "nowcasting."  Doc. 1, Ex. 56–59.

The Federal Reserve System is made up of twelve Federal Reserve Banks, the Board of Governors of the Federal Reserve System, and the Federal Open Market Committee.  Doc. 67, 2. The Federal Banks are federally chartered corporate entities that carry out the nationwide operations of the central bank of the United States.  *Id.*  On April 12, 2016, Federal Reserve Bank of New York launched the "Nowcasting Report," a weekly economic bulletin.  Doc. 36, 24.  Economic Alchemy asserts that this report constitutes trademark infringement.  *Id.*

---

[2] Economic Alchemy denies this allegation.  Doc. 36, ¶ 1.

Economic Alchemy alleged that the Federal Banks offered various services and products under the name "NOWCAST." *Id.*

On September 8, 2015, Delia Sawhney, a Director of Research at the Federal Reserve Bank of Boston registered for Economic Alchemy's NOW-CAST Service, and so did Jessica Iannuzzi, a software developer at the Federal Reserve Bank of New York signed up for the service on September 8, 2016. *Id.* at 25. Economic Alchemy sent the Federal Banks cease-and-desist letters and allegations of infringement for the Federal Banks' use of the terms "nowcast" or "now-cast." *Id.* at 26. On or about May 1, 2017, the Federal Banks filed a petition of trademark cancellation before the Trademark Trial and Appeal Board ("TTAB") with respect to Economic Alchemy's registration of "NOWCAST" and fourteen days later, they filed one for "NOW-CAST." *Id.* at 25.

On December 12, 2016, Economic Alchemy sent Now-Casting a cease-and-desist letter asserting that Now-Casting's use of the name "Now-Casting Economics, Ltd." ("Contested Name") infringed on the Challenged Marks. Doc. 1, ¶ 2. Now-Casting instituted proceedings against Economic Alchemy in front of the TTAB to cancel their registrations and oppose their application of the pending trademark (collectively, "TTAB Proceedings"). *Id.* ¶ 3.

Now-Casting's main contentions are that the terms "NOWCAST" and "NOW-CAST" are generic and therefore not registerable as trademarks. *Id.* ¶ 49. The terms are allegedly known and understood by the consuming public as the services for which Economic Alchemy registered and uses the Challenged Marks for, namely predictions of economic conditions in the present or near-present. *Id.* Now-Casting argues that registration of the Challenged Marks is contrary to public policy and will deprive Now-Casting and the consuming public of the ability to continue to use these terms. *Id.* ¶ 54.

4

Now-Casting points to a variety of instances where the terms "nowcast" and "nowcasting" were used "generically" or "descriptively," *before* Economic Alchemy's claimed date of first use: in articles and books written by other economics and researchers, *id.* ¶20–37; and articles written by Dr. Guzman, Economic Alchemy's principal, *id.* ¶ 38–42; as well as use *after* Economic Alchemy's claimed date of first use: articles and books by economists and researchers who have continued to use the term, *id.* ¶ 44; economic courses and conferences, *id.* ¶ 45; other companies, *id.* ¶ 46; job listings, *id.* ¶ 47; and resumes of economists, *id.* ¶ 48.

## PROCEDURAL HISTORY

On March 1, 2017, Now-Casting filed petitions in the TTAB opposing Economic Alchemy's application to register its new "NOWCAST" mark and to cancel its prior "NOWCAST" mark. Doc. 36, 13. Now-Casting's petitions were "virtual twins" of petitions filed by the Federal Banks in connection with the same registrations, which were dismissed for failure to state a claim. *Id.* at 15. On October 11, 2017, Now-Casting filed a petition to cancel the "NOW-CAST" mark and moved to consolidate the three matters on October 19, 2017. *Id.* at 13. Economic Alchemy, acting through its principal, Dr. Guzman, moved to dismiss the petition for the challenge against the "NOW-CAST" mark, which delayed the consolidation. *Id.* at 14. On February 22, 2018, the TTAB granted Economic Alchemy's motion to dismiss for failure to state a claim because Now-Casting did not set forth sufficient facts to plead cancellation based on genericness or descriptiveness. *Id.* at 14–15. On March 13, 2018, Now-Casting filed an amended petition to cancel the "NOW-CAST" mark and Economic Alchemy moved to dismiss once again, but on April 26, 2018, Now-Casting moved to suspend the TTAB Proceedings. *Id.* at 15. Because the issue of infringement will not be decided in the TTAB Proceedings, Now-Casting now brings this action in federal court. Doc. 1, ¶ 4.

Now-Casting filed the instant action on March 19, 2018, against Economic Alchemy seeking declaratory relief stating Economic Alchemy has no trademark rights over the Challenged Marks; two orders, pursuant to 15 U.S.C. § 1119, directing the Commissioner of Patents and Trademarks to cancel the Challenged Marks; an order restraining Economic Alchemy from interfering with Now-Casting's use of the Contested Name; and attorney's fees and costs. Doc. 1, ¶ 4. Economic Alchemy filed an amended answer with counterclaims against Now-Casting and joined the Federal Banks as third-party defendants on August 21, 2018. Doc. 36. On December 21, 2018, Now-Casting moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Doc. 64. That same day, the third-party defendants filed a joint motion to dismiss alleging lack of personal jurisdiction, improper venue, improper joinder and failure to state a claim. Doc. 66.

## DISCUSSION

### I. MOTION FOR JUDGMENT ON THE PLEADINGS

#### A. Standard of Review

Under Fed. R. Civ. Pro. 12(c), courts apply the same standard as applied on a motion to dismiss for failure to state a claim under Rule 12(b)(6). Judgment on the pleadings is appropriate only if, drawing all reasonable inferences in favor of the non-moving party, it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994). In considering a Rule 12(c) motion, courts should assume all the well pleaded factual allegations in the non-moving party's pleadings to be true, and all opposing allegations in the movant's pleadings as false. *Brown v. De Fillipis*, 717 F. Supp. 172, 178 (S.D.N.Y. 1989). When deciding a motion for judgment on the pleadings, a court may consider "the pleadings and attached exhibits, statements or documents incorporated

6

by reference, and matters subject to judicial notice." *Prentice v. Apfel*, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)).

The presumption of validity in the federal registration of a trademark can be overcome by establishing the generic or descriptive nature of the mark. *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016). "Marks are classified, in ascending order of strength, as (1) generic; (2) descriptive; (3) suggestive; [or] (4) arbitrary or fanciful." *Star Industries, Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 384–85 (2d Cir. 2005) (internal quotation marks and citations omitted). It is well-settled law that a trademark holder cannot appropriate generic or descriptive terms for its exclusive use. *Am. Cyanamid Corp. v. Connaught Labs., Inc.*, 800 F.2d 306, 308 (2d Cir. 1986). Courts may consider factors such as: (1) proof of widespread use of the mark by competitors that has not been contested by the seller, and (2) the public's inability to call the product by any other name than the trademarked term. *Horizon Mills Corp. v. QVC, Inc.*, 161 F. Supp. 2d 208, 214 (S.D.N.Y. 2001).

### B. Generic Terms

The Lanham Act provides for the cancellation of a trademark when it "becomes the generic name for the goods or services, or a portion thereof." 15 U.S.C. § 1064(3); *see also Park 'N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 193–94 (1985) ("[A] registered mark may be canceled at any time on the grounds that it has become generic."). Trademark protections benefit consumers by allowing them to select products based on origin, as this encourages sellers to market products of reliable quality that consumers associate with their mark. *American Cyanamid*, 800 F.2d at 308. Consumers do not benefit when trademark laws prevent sellers from using generic or descriptive terms to describe their products, i.e. describing their product as a "bicycle." *Id.*

7

Whether a trademark is generic or descriptive is a matter of fact that is not properly determined by examining the pleadings alone. *FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 334 (E.D.N.Y. 2009); *see also In re Cordua Restaurants, Inc.*, 823 F.3d 594, 599 (Fed. Cir. 2016) (holding whether a trademark is generic is a question of fact). Generic marks consist of words identifying the relevant category of goods or services which are not distinctive and thus not protectable under any circumstances. *Star Industries*, 412 F.3d at 385. There are two principle circumstances under which courts have determined that trademarks are generic: (1) when a seller appropriates an existing term and claims exclusive rights in it as a "trademark," and (2) where a seller establishes "trademark rights" in a term which most of the relevant public then appropriates as the name of the product. *Horizon Mills*, 161 F. Supp. 2d at, 213.

When determining if a mark is generic, the key question is the primary significance of the registered mark to the relevant public. *Tiffany & Co. v. Costco Wholesale Corp.*, 994 F. Supp. 2d 474, 480 (S.D.N.Y. 2014). Under the "primary significance test," courts ask whether the primary significance of the term, in the minds of the relevant public, is the product or the producer. *Kellogg Co. v. Nat'l Biscuit Co.*, 305 U.S. 111, 118 (1938). To become generic, the principal meaning of the work to the relevant public must be the nature or class of an article, rather than indication of its origin. *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 144 (2d Cir. 1997). "A mark's common usage and understanding by the relevant public may be discerned from 'any competent source,'" such as "consumer surveys, testimony of consumers or trade professionals, dictionary definitions, uncontested usage of the mark by competitors to describe their products, generic usage in newspaper and magazine articles, and generic usage by

8

the proponent of the trademark." *Jewish Sephardic Yellow Pages, Ltd. v. DAG Media, Inc.*, 478 F. Supp. 2d 340, 360 (E.D.N.Y. 2007).

Based on the pleadings, the Court has no basis on which to define the relevant public because Economic Alchemy denied the allegations about the relevant public. Doc. 73, 3. Now-Casting is entitled to judgment on the pleadings only if it has established "that no material issue of fact remains to be resolved and that [it] is entitled to judgment as a matter of law." *Juster Assocs. v. City of Rutland, Vt.*, 901 F.2d 266, 269 (2d Cir. 1990) (internal citations omitted). In considering a Rule 12(c) motion, courts should assume all the well pleaded factual allegations in the non-moving party's pleadings to be true, and all opposing allegations in the movant's pleadings as false. *Brown v. De Fillipis*, 717 F. Supp. 172, 178 (S.D.N.Y. 1989). In its complaint, Now-Casting defines the relevant public as "those interested in economic predictions and forecasting such as economists, investors, research analysists, students, and others." Doc. 1, ¶ 51. Economic Alchemy denied every allegation regarding the relevant public in its answer. Doc. 36, 6. Economic Alchemy does not provide its own definition of the relevant public. Doc. 76, 3. All favorable inferences must be drawn in favor of the non-moving party. *Latour v. Columbia Univ.*, 12 F. Supp. 3d 658, 661 (S.D.N.Y. 2014). Therefore, the pleadings do not contain a definition of the relevant public, which is an issue of material fact that remains unresolved.

Now-Casting's motion for judgment on the pleadings turns on the primary significance that the relevant public places on the terms at issue. Now-Casting explicitly makes that point in its reply memo:

> [T]his Motion ultimately turns on whether the Court can determine as a matter of law, based on the overwhelming and uncontradicted facts before it, that Plaintiff has satisfied the critical inquiry to show genericness—"whether members of the

> relevant public primarily use or understand the term sought to be protected to refer to the genus of goods or services in question." *H. Marvin Ginn Corp. v. Int'l Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 989–90 (Fed. Cir. 1986).

Doc. 76, 5. Now-Casting asserts that Economic Alchemy's rote denial does not overcome a motion for judgment on the pleadings, however it is Now-Casting who must prove the absence of all material facts. *Tiffany*, 994 F. Supp. 2d at 479 ("The moving party bears the burden of demonstrating the absence of a material fact."). The definition of the relevant public is of paramount importance in a trademark claim based on genericness. Doc. 73, 3; *see also Kellogg Co.*, 305 U.S. at 113 (holding under the primary significance test courts analyze consuming public's understanding of mark). Accordingly, after a thorough review of the pleadings, the Court holds that Now-Casting has not alleged a non-disputed sufficient factual basis for inferring who the relevant public is, and subsequently whether the terms at issue are generic.

### C. Merely Descriptive Terms

Marks which are "merely descriptive" are not inherently distinctive because when they describe a product, they do not identify a source, and hence is not protectable. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992). A "merely descriptive" mark describes the qualities, ingredients, or characteristics of a good or service and similar goods can be described using the same descriptive qualities. *Estate of P.D. Beckwith, Inc., v. Comm'r of Patents*, 252 U.S. 538, 543–44 (1920). In *Beckwith*, the challenged mark contained the terms "Round Oak" and "Moistair Heating System"; the Supreme Court found that "Moistair Heating System" alone was descriptive but that in association with "Round Oak," which did not describe anything about the product, the composite mark was protectable. *Id.* at 544–45. Thus, the prohibition is not directly against "merely descriptive words" but of a trademark which only consists of such words. *Id.* at 544.

10

The Lanham Act provides for an exception when a descriptive mark that could not otherwise be registered under the Act becomes distinctive of the seller's goods in commerce.  15 U.S.C. §1052(e) and (f).  A mark that is merely descriptive of a product can become entitled to protection if it acquires a secondary meaning.  *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000) (holding secondary meaning occurs when the relevant public attaches a primary significance to the source of the product or service rather than the product or service itself).  Accordingly, the general rule is that an identifying mark is distinctive and capable of being protected if (1) it is inherently distinctive, or (2) it has acquired distinctiveness through secondary meaning.  Restatement (Third) of Unfair Competition § 13.

The Court takes judicial notice of the books, articles, courses, conferences, job listings, resumes, etc. presented in the pleadings.  Doc. 65, 11.  Federal Rule of Evidence 201(b) permits a court to take notice of facts that are not subject to reasonable dispute because they are generally known within the court's territory or that can be accurately determined from reliable sources.  A court may take judicial notice of publicly available materials—including articles, books, and reports—that show the information available to the relevant market at the relevant time.  *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d 273, 299 (S.D.N.Y. 2012); *see also L-7 Designs, Inc. v. Old Navy*, LLC, 647 F.3d 419, 422 (2d Cir. 2011) (on a Rule 12(c) motion, courts consider "the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case").  Economic Alchemy "denies knowledge and information sufficient to answer or deny the allegations" in reference to the articles, books, conferences, etc., that Now-Casting cites in its complaint.  Doc. 36, 3–6.  However, as these are publicly available materials, the Court takes judicial notice of them.

Now-Casting asserts that the Challenged Marks "encompass economic predicting and forecasting, including a prediction of economic conditions in the present or near-present, and a method of providing predictions or estimates of present or near-present economic or financial conditions," Doc. 1, ¶ 19, however, Economic Alchemy denies that allegation, Doc. 36, 3. Plaintiff has presented a large amount of evidence of how the terms are used in other contexts. Doc. 1, ¶ 20–48. The pleadings contain hundreds of examples that use variations of the terms at issue primarily in an academic context such as research articles, books, and university seminars. *Id.* The evidence also references other competing companies, such as Putnam Global, Ex. 112; Nowcasting Scotland, Ex. 113; PwC Global, Ex. 114; Ten-X, Ex. 115; and Fulcrum Asset Management, Ex. 116.

But the uses catalogued in the complaint does not amount to proof of "generic" uses of the Challenged Marks because the uses are not in connection with the sale or offering for sale of services. Doc. 73, 5. The mere existence of third-party registrations of the mark are not enough; the alleged infringer must show factors such as third-party use of the trademark and that it has customer recognition. *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F. Supp. 2d 271, 281 (S.D.N.Y. 1998). Now-Casting's evidence does not demonstrate third parties used the terms as trademarks or in connection with the sale of goods and services. *Id.* at 277 (holding presumption of validity extends only to goods and services noted in the registration certificate). Similarly, uses by Dr. Guzman, Economic Alchemy's principal, were in academic journals and do not refer to the term as a trademark or in connection to an economic forecasting company. Doc. 73, 5. Furthermore, Now-Casting has not presented evidence that the term is used widely in the media. *Horizon Mills Corp.,* 161 F. Supp. 2d at 214. Accordingly, despite the numerous

submissions the evidence is not enough to overcome the presumption that Economic Alchemy's trademark is valid.

Now-Casting further argues that even if the Challenged Marks are found to be merely descriptive, they are still invalid unless Defendant can prove secondary meaning. Doc. 65, 19. The Court cannot determine who the relevant public is based on the pleadings and thus cannot ascertain whether the merely descriptive terms have taken on a secondary meaning. *Wal-Mart Stores*, 529 U.S. at 211. Furthermore, as Economic Alchemy asserts, Now-Casting has posed a legal question to the Court on a motion for judgment on the pleadings under Rule 12(c). Doc. 73, 6. Now-Casting has not plead facts in support of their argument against the Challenged Marks obtaining a secondary meaning. Doc. 65, 19. Therefore, no reasonable fact-finder can determine whether the terms at issue have acquired a secondary meaning based on the pleadings.

## II. DISMISSING THE COUNTERCLAIMS

Now-Casting's motion to dismiss Economic Alchemy's counterclaims is premised entirely on the alleged validity of its motion for judgment on the pleadings. Doc. 73, 8. Now-Casting merely asserts that because the terms at issue are generic and/or merely descriptive, they are not capable of secondary protection, and therefore, Now-Casting's use of its business name and the terms at issue could not have infringed on the non-existent trademark rights. Doc. 65, 20–21. As this Court has held that it cannot determine whether the terms are generic or descriptive based on the pleaded facts, Now-Casting's motion for dismissing the counterclaims also fails.

13

### III. JOINT MOTION TO DISMISS

#### A. Standard of Review

The eleven Federal Banks that are not located in New York move to dismiss the case for lack of personal jurisdiction and improper venue; all the Federal Banks move to dismiss the action for proper joinder and failure to state a claim. Doc. 67. When ruling on a motion to dismiss pursuant to Fed. R. Civ. Pro. 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681, 686 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To satisfy the pleading standard under Fed. R. Civ. Pro. 8, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570). Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully." *Id*. As a threshold matter the Court addresses the claims regarding personal jurisdiction, venue, and joinder before the argument for failure to state a claim.

#### B. Personal Jurisdiction

The relevant eleven Federal Banks challenge personal jurisdiction in this District as they are not located in New York. There are two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Dennis v. JPMorgan Chase & Co.*, 343 F. Supp. 3d 122, 201 (S.D.N.Y. 2018), *adhered to on denial of reconsideration*, No. 16-CV-6496 (LAK), 2018 WL 6985207 (S.D.N.Y. Dec. 20, 2018). General jurisdiction over foreign corporations is proper when the corporation's affiliations are so continuous and systematic that they are essentially "at

14

home" in the forum state. *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014). A corporate

defendant is at home at the place of incorporation and its principal place of business. *See BNSF

Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017). "Specific jurisdiction is a significantly more

limited doctrine" than general jurisdiction. *Dennis*, 343 F. Supp. 3d at 202. For a state court to

exercise specific jurisdiction, the suit must arise out of the defendants' contacts which create a

substantial connection with the forum state. *Id.* at 202–03. The due process inquiry requires

courts to evaluate the "quality and nature of the defendant's contacts with the forum state under a

totality of the circumstances test." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d

161, 170 (2d Cir. 2013) (quoting *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 246 (2d Cir.

2007)).

Additionally, courts in New York State may exercise specific personal jurisdiction over

defendants under the New York long-arm statute if (1) the defendant transacts any business

within the state, and (2) the cause of action arises from that business transaction. *Alibaba Grp.

Holding v. Alibabacoin Found.*, No. 18-CV-2897(JPO), 2018 WL 2022626, at *4–8 (S.D.N.Y.

Apr. 30, 2018) (citations omitted); *see also* N.Y. C.P.L.R. § 302(a) (NY long-arm statute). "A

suit will be deemed to have arisen out of a party's activities in New York if there is an articulable

nexus, or a substantial relationship, between the claim asserted and the actions that occurred in

New York." *Royalty Network Inc. v. Dishant.com, LLC*, 638 F. Supp. 2d 410, 422 (S.D.N.Y.

2009) (quoting *Best Van Lines*, 490 F.3d at 246).

General jurisdiction is not proper here because none of the Banks challenging venue were

incorporated in New York or have their principal place of business in New York. Doc. 67, 6.

District courts in this Circuit have previously recognized it lacks personal jurisdiction over

Reserve Banks located outside New York. *See Northpark Nat. Bank v. Bankers Tr. Co.*, 572 F. Supp. 520, 522–23 (S.D.N.Y. 1983) (dismissing complaint against Federal Reserve Bank of Chicago on jurisdictional grounds because it had no choice but to participate in open market transactions per its quintessential government functions); *see also Total Aviation Servs., Inc. v. United Jersey Bank*, 626 F. Supp. 1087, 1090 (E.D.N.Y. 1986) (dismissing action against Federal Reserve Bank for similar reasons). Economic Alchemy contests the Banks' reliance on *Northpark* because the Banks allegedly coordinated and centralized their operations, and that the federal reserve system is different than it was in 1983. Doc. 75, 7. But even if true, Economic Alchemy's allegations are inadequate to establish personal jurisdiction because aside from an exceptional case, a corporation is "at home" in its place of incorporation or principal place of business. *Daimler*, 571 U.S. at 139. Economic Alchemy does not dispute that any of the Federal Banks challenging personal jurisdiction are incorporated in New York or have their principal place of business in New York (except the Federal Reserve Bank of New York). Accordingly, the Court does not credit Economic Alchemy's conclusory allegation of general jurisdiction.

Economic Alchemy appears to imply that because the Federal Banks filed oppositions against Economic Alchemy's applications to register the Challenged Marks in a TTAB proceeding, this Court has specific jurisdiction over them. Doc. 75, 5 (claiming to meet personal jurisdiction standard because the Federal Banks filed oppositions to Economic Alchemy's registration of the Challenged Marks). However, they cite no legal precedent that shows this assertion establishes personal jurisdiction. Additionally, Economic Alchemy does not claim that any of the eleven banks outside of New York used the term "nowcast" or a variant in connection with activities in New York. For similar reasons, specific jurisdiction is also not proper under the New York long-arm statute. Doc. 67, 7; N.Y. C.P.L.R. § 302(a). Lastly, Economic Alchemy

16

does not address the minimum contacts required for this Court to exercise specific personal jurisdiction over the Banks.  Doc. 67, 7–8.  Accordingly, Economic Alchemy has not demonstrated that this Court has personal jurisdiction over the Banks, except the Bank of New York whose principal place of business is in New York.

### C.  Improper Venue

The eleven Federal Banks outside New York object to venue pursuant to Fed. R. Civ. P 12(b)(3).  The controlling statute is 28 U.S.C. § 1391(b), which establishes in relevant part that suit may be brought in the district in where "a substantial part of the events or omissions giving rise to the claim occurred."  When determining where a trademark infringement case arises, courts use a "weight of contacts" test.  *Honda Associates v. Nozawa Trading, Inc.*, 374 F. Supp. 886, 891–92 (S.D.N.Y. 1974).  Venue is proper in a trademark infringement case in each jurisdiction where infringement is properly alleged to have occurred.  *Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 182 (S.D.N.Y. 1995).  To demonstrate a substantial part of evens giving rise to a trademark infringement case occurred, the movant can demonstrate either substantial sales or intentional targeting of the infringing product in the relevant district.  *Detroit Coffee Co., LLC v. Soup for You, LLC*, No. 16-CV-9875 (JPO), 2018 WL 941747, at *2 (S.D.N.Y. Feb. 16, 2018).  Economic Alchemy did not allege facts that demonstrate the Federal Banks challenging venue infringed on their trademark in New York.  Furthermore, Economic Alchemy failed to respond to the Banks' venue challenge, effectively conceding that venue is not proper.  *DoubleLine Capital LP v. Odebrecht Fin.*, Ltd., 323 F. Supp. 3d 393, 449 (S.D.N.Y. 2018) (holding that when party fails to address claim in opposition to motion to dismiss, those claims are considered abandoned).  Accordingly, venue over the relevant Banks is not proper.

17

### D.  Improper Joinder

Joinder over any of the Federal Banks is not proper.  Federal Rule of Civil Procedure 14 permits a defendant to implead a third-party defendant "who is or may be liable to it for all or part of the claim against it."  Fed. R. Civ. P. 14(1).  It is well-settled that an impleader (or "third party") action must be "dependent on" or "derivative of" the main action.  *Bank of India v. Trendi Sportswear, Inc.*, 239 F.3d 428, 438 (2d Cir. 2000).  A third-party claim can also be brought when the third party is secondarily liable to the defendant.  *Zohar CDO 2003-1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 656 (S.D.N.Y. 2017).  "The traditional grounds for a third-party action are indemnification, contribution, or subrogation…."  *Kronyak v. Tishman Constr. Corp.*, No. 16CIV8640ERHBP, 2019 WL 1929842, at *1 (S.D.N.Y. May 1, 2019) (internal citations omitted).  Joinder may be required pursuant to Federal Rule of Civil Procedure 19(a)(1)(A), where "the court cannot accord complete relief among existing parties," or 19(a)(1)(B), where the absent person claims an interest in the action and their absence impedes their ability to protect the interest or leaves an existing party subject to substantial risk because of the interest.  Fed. R. Civ. P. 19(a)(1)(A)–(B).

Economic Alchemy's allegations do not arise from the claims of the main action.  Defendant did not claim indemnification, contribution, or subrogation and did not allege the Banks bear any liability to Economic Alchemy for Now-Casting's claims against it.  Doc. 67, 3.  Now-Casting seeks declaratory relief of non-infringement and an order holding that Economic Alchemy's trademarks are invalid.  Doc. 1, ¶ 4.  Instead, Economic Alchemy asserts new claims of action against the Federal Banks:  (1) separate purported acts of trademark infringement committed by the banks, and (2) a breach of contract claim.  Doc. 36, 27–30.

18

Economic Alchemy counterargues that this Court's ruling concerns identical claims and allegations concerning an identical trademark brought by the parties acting in concert in front of the TTAB.[3]  Doc. 75, 2.  Aside from citing to a Southern District of California case to support their assertion that in trademark infringement cases declaratory action is preferable to a TTAB, Economic Alchemy pleads no facts that show joinder is proper.  Doc. 75, 2.  Additionally, that argument is inapposite as the California case is nonbinding on this Court and did not address questions of joinder.  *Whole E Nature, LLC v. Wonderful Co., LLC*, No. 17CV10-LAB (KSC), 2017 WL 4227150, at *3 (S.D. Cal. Sept. 22, 2017) (discussing forum shopping in trademark infringement case in California).  Accordingly, Economic Alchemy has not demonstrated that joinder is proper under Rule 14.

As the Federal Banks claim, nothing about Now-Casting's claims requires their presence to grant complete relief to Now-Casting or Economic Alchemy.  Doc. 67, 4.  And even assuming *arguendo* that the Banks have an interest in the action, Economic Alchemy cannot assert that interest on their behalf.  *See Peregrine Myan. Ltd. v. Segal*, 89 F.3d 41, 49 (2d Cir. 1996) (holding defendant's attempt to assert an interest on behalf of the absent party fell outside the language of Rule 19(a)).  Economic Alchemy relies on an unpublished District of Louisiana case to assert that complete relief cannot be granted in this case without joining the Federal Banks. *Oreck Corp. v. Nat'l Super Serv. Co.*, No. CIV. A. 95-3738, 1996 WL 371929 (E.D. La. July 2, 1996) (holding joinder was proper under Rule 19 when third party had direct interest in trademark action).  Not only is this case nonbinding on this Court, but it also does not support Defendant's proposition that complete relief cannot be asserted without joining the Banks.  The

---

[3] Economic Alchemy does not name the parties, but the Court assumes they refer to the Federal Banks, the Board of Governors, and Now-Casting.

third party in *Oreck* was seeking declaratory judgment rendering the trademark invalid and so had a direct interest in the litigation. *Id.* at *3. Here, the Federal Banks do not seek declaratory relief and Economic Alchemy cannot assert this interest on their behalf. Economic Alchemy failed to explain why the Court cannot afford complete relief between Now-Casting and Economic Alchemy unless the Banks are joined to the main action. Accordingly, joinder is not proper under Rule 19 or Rule 14.

### E. Failure to State a Claim

Even if joinder were proper and this Court could exercise personal jurisdiction and venue over the relevant Federal Banks, the third-party complaint merits dismissal based on failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). See *supra* Part III(A) for a discussion on the standard for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Economic Alchemy asserts five causes of action against the Federal Banks: (1) infringement of registered trademarks, (2) infringement of common law trademarks and unfair competition, (3) false designation of origin, (4) New York deceptive business practices, and (5) breach of contract. Doc. 36, 27–30.

The first three causes of action are based on Economic Alchemy's Challenged Marks and require that Economic Alchemy plead facts that show that the Federal Banks used the Challenged Marks "in commerce" in connection with the sale or advertising of goods and services without Economic Alchemy's consent and that such use is likely to cause confusion, mistake, or deception. 15 U.S.C. § 1114(1)(a). However, Economic Alchemy only made conclusory allegations that the Federal Banks offered various services and products using the term "nowcast." Doc. 36, 24. Economic Alchemy did identify that on April 12, 2016, the Federal Reserve Bank of New York launched a bulletin called "Nowcasting Report" and alleged

that this infringed on their trademark.  *Id.*  The Banks challenged this bare allegation of infringement.  Doc. 77, 9.  Economic Alchemy reasoned that the Banks have an interest in the litigation because they filed the TTAB petitions and were on notice of the conduct being complained of here.  Doc. 75, 8–9.  Economic Alchemy's position appears to be that because the Federal Banks challenged the trademark registrations, Economic Alchemy's causes of action automatically survive a Rule 12(b)(6) motion to dismiss.  *Id.*; Doc. 77, 9.  However, Economic Alchemy does not cite any precedent to support this argument.

Economic Alchemy brought a fourth cause of action against the Federal Banks pursuant to N.Y. Gen. Bus. L. § 349 which prohibits "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York.  "A party challenging an act or practice under § 349 must show that: (1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury."  *GTFM, Inc. v. Solid Clothing, Inc.*, 215 F. Supp. 2d 273, 301–02 (S.D.N.Y. 2002).  Economic Alchemy failed to plead facts that meet any of these elements and only made conclusory allegations regarding the Banks' alleged use of the trademarks.  Doc. 36,  29–30.  Therefore, this cause of action fails.

Finally, Economic Alchemy asserts a breach of contract claim against the Federal Reserve Bank of Boston and the Federal Reserve Bank of New York.  Doc. 36, 30.  An employee from each of those two banks registered or signed up for Economic Alchemy's "NOW-CAST Service" which allegedly meant they agreed to the terms and conditions of the service.  *Id.* at 25.  Economic Alchemy did not identify which law purportedly governs the interpretation of the alleged contracts, so for purposes of this motion New York law is referenced.  To state a claim for breach of contract under New York law, a plaintiff must allege

"(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Regardless of which law Economic Alchemy intended to apply, they did not allege any facts about the terms of the purported contracts, consideration supporting contract formation, or duties and obligations that were breached. Doc. 65, 16. Therefore, this cause of action also fails.

Regarding the overall motion to dismiss, Economic Alchemy responded that while they do not dispute the elements of the respective claims that the Federal Banks made out, the Court should still reject the Banks' analysis. Doc. 75, 8. But Economic Alchemy did not make factual allegations to support this claim. Finally, Economic Alchemy asked the Court for a chance to replead. Doc. 75, 8. It is entirely within this Court's discretion to allow Economic Alchemy to replead. *Irvins v. Metro. Museum of Art*, No. 15-cv-5180(RJS), 2016 WL 4508364, at *5 (S.D.N.Y. Aug. 26, 2016) (denying request for leave to replead after non-movant offered no basis for request or explanation as to how they would cure deficiencies in their complaint). Economic Alchemy did not provide any indication that a revised pleading would overcome its failure to state claims upon which relief can be granted. Doc. 77, 10. Accordingly, the Court finds that Economic Alchemy has not plead sufficient facts to overcome the motion to dismiss or to warrant leave to amend their complaint.

## CONCLUSION

In summary, the motion for judgment on the pleadings is DENIED, and the motion to dismiss the complaint is GRANTED with prejudice. The parties are directed to attend a status conference on October 17, 2019 at 10:00 a.m. The Clerk of the Court is respectfully directed to terminate the motions. Docs. 61, 64, 66.

22

It is SO ORDERED.

Dated: September 24, 2019
      New York, New York

                                     EDGARDO RAMOS
                                     United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                          :

NOW-CASTING ECONOMICS, LTD.,           :

                                         :

                      Plaintiff,          :

                                         :             18 Civ. 2442 (JPC)

        -v-                                :

                                         :            <u>OPINION AND ORDER</u>

ECONOMIC ALCHEMY LLC,               :

                                       :

                     Defendant.      :

                                       :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

      This case involves a dispute over trademarks.  In 2016, Economic Alchemy LLC ("EA")
sent Now-Casting Economics, Ltd. ("Now-Casting") a cease-and-desist letter accusing Now-
Casting of infringing two of EA's registered trademarks: "NOWCAST", Registration No.
4,341,813 and "NOW-CAST", Registration No. 4,341,813 (the "Disputed Terms").  Now-Casting
then sued EA seeking a declaration that its use of the Disputed Terms does not infringe EA's
trademarks, an order directing the United States Patent and Trademark Office ("USPTO") to
cancel those trademarks, and a permanent injunction restraining EA's interference with Now-
Casting's use of the Disputed Terms.  EA filed counterclaims alleging trademark infringement.
Then, in 2020, the USPTO cancelled EA's trademark registrations on administrative grounds.

      That cancellation mooted many of Now-Casting's claims.  But one of its claims remains:
Now-Casting's request for a declaration that its use of the Disputed Terms does not violate EA's
unregistered trademark rights under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).
Pending before the Court are the parties' cross motions for summary judgment.  Now-Casting
seeks summary judgment on that remaining declaratory judgment claim and on EA's

counterclaims, and EA seeks summary judgment on Now-Casting's claim.  Because no evidence suggests that EA's now unregistered trademarks are protectable, the Court grants Now-Casting's motion for summary judgment and denies EA's motion for summary judgment.

Both parties also seek sanctions.  Now-Casting has moved for sanctions in connection with EA's counterclaims, and EA seeks its fees in responding to that sanctions motion.  EA has not, however, taken an objectively unreasonable position in filing and continuing to pursue its counterclaims, nor has Now-Casting taken such a position in seeking sanctions.  The Court therefore denies Now-Casting's motion for Rule 11 sanctions and EA's request for its fees in opposing that sanctions motion.

## I.  Background

### A.    Facts[1]

This case involves questions about trademark infringement surrounding the Disputed Terms, "nowcast" and "now-cast."  In the economics context, "nowcast" describes a model for

---

[1] These facts are mainly drawn from Now-Casting's statement of material facts under Local Civil Rule 56.1, Dkt. 137 ("Pl. 56.1 Stmt."), EA's statement under Rule 56.1, Dkt. 135-1 ("Deft. 56.1 Stmt."), Now-Casting's counter-statement statement under Rule 56.1, Dkt. 191 ("Pl. Counter 56.1 Stmt."), EA's counter-statement statement under Rule 56.1, Dkt. 194 ("Deft. Counter 56.1 Stmt."), and the exhibits filed by the parties.  Unless otherwise noted, for facts first raised in Now-Casting's statement of material facts, the Court cites only to Now-Casting's Rule 56.1 statement when the parties do not dispute the fact, EA has not offered admissible evidence to refute that fact, or EA simply seeks to add its own "spin" on the fact or otherwise dispute the inferences from the stated fact.  The Court cannot follow its usual practice of citing the counter-Rule 56.1 statement because EA did not comply with Local Civil Rule 56.1—it did not file "a *correspondingly numbered* paragraph responding to each numbered paragraph in the statement of the moving party."  Loc. R. Civ. P. 56.1(b) (emphasis added).  For those paragraphs in Now-Casting's Rule 56.1 statement that EA did not respond to, the Court will deem the facts admitted so long as they are supported by evidence in the record.  *See Marino v. Schult*, 764 F. App'x 73, 74 (2d Cir. 2019) ("If a non-moving party fails to comply with local rules governing summary judgment, a district court may rely on a moving party's statement of undisputed facts as long as those facts are supported by the record." (citation omitted)).

predicting economic conditions, like gross domestic product growth, in the present or near future. Dkt. 142 ("McMahon Declaration") ¶ 8; Pl. Counter 56.1 Stmt. ¶ 6. Since 1996, academic papers and articles have used the Disputed Terms to describe statistical models used to estimate, predict, or analyze macroeconomic information. Dkts. 143-184 ("Grieco Declaration") ¶ 74, Exhs. J1-J80; Pl. 56.1 Stmt. ¶ 91.

### 1. Now-Casting Background

On December 8, 2010, Domenico Giannone, Jasper McMahon, Lucrezia Reichlin, and Saverio Simonelli founded a United Kingdom corporation called Now-Casting to sell economic forecasts generated by nowcasting models to asset management companies, central banks, and other entities. McMahon Declaration ¶ 5, Exh. B1.1; Pl. 56.1 Stmt. ¶ 12. Almost two months before formerly launching the company, on October 11, 2010, McMahon bought the domain name "now-casting.com" for the company. McMahon Declaration ¶ 6, Exhs. B1, B1.1; Pl. 56.1 Stmt. ¶ 12. Soon after Now-Casting's launch, on December 19, 2010, McMahon created a Wikipedia page about nowcasting in economics. McMahon Declaration ¶ 7, Exh. B2; Pl. 56.1 Stmt. ¶ 13. Around this same time, "in late 2010," Now-Casting began using the name Now-Casting Economics Ltd. in the United Kingdom. McMahon Declaration ¶ 9; Pl. 56.1 Stmt. ¶ 15.

Then by "at least as early as February 22, 2011," Now-Casting began "marketing its nowcasting services to potential customers in the United States." McMahon Declaration ¶ 9, Exh. B3; Pl. 56.1 Stmt. ¶ 15. This included "using the name Now-Casting Economics Ltd. and its

---

As for EA's Rule 56.1 statement, EA once again has not complied with the Local Rule because it cited no admissible evidence. *See* Loc. R. Civ. P. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."). Thus, unless Now-Casting has admitted the facts in question, the Court will not consider any facts raised only in EA's Rule 56.1 statement.

logo . . . , which incorporates the word Now-Casting, as well as the" Disputed Terms. McMahon Declaration ¶ 9, Exh. B3; Pl. 56.1 Stmt. ¶ 15. These U.S.-based marketing efforts were not a one-off: Now-Casting marketed to at least forty-two U.S. customers in 2011 using its name and logo. McMahon Declaration ¶ 10, Exhs. B3-B81; Pl. 56.1 Stmt. ¶ 16. And at least twice in 2011, Reichlin and McMahon, Now-Casting's CEO, traveled to the United States to advertise to potential clients. McMahon Declaration ¶ 11; Exhs. B3, B76; Pl. 56.1 Stmt. ¶ 11. These efforts paid off. In 2011, three U.S. companies paid to subscribe to Now-Casting's services. McMahon Declaration ¶ 12; Pl. 56.1 Stmt. ¶ 17. Besides the company's marketing efforts, Now-Casting used the Disputed Terms in subscriber emails and on the company website. McMahon Declaration ¶¶ 13-14; Exhs. B26, B32, B33, B39; Pl. 56.1 Stmt. ¶¶ 18-19.

### 2. EA Background

EA is a New York Corporation founded by economist Giselle Guzman. Grieco Declaration, Exh. D ("Guzman Dep. Tr.") at 30:6-11; Pl. 56.1 Stmt. ¶ 22. It offers "services in the nature of economic information, consultancy, and software-as-a-service." Dkt. 193 ("Guzman Declaration") ¶ 2; Pl. 56.1 Stmt. ¶¶ 21. EA's customers mainly consist of financial companies, real estate companies, colleges, and corporations. Grieco Declaration ¶ 13, Exhs. F1-1, F1-2; Pl. 56.1 Stmt. ¶ 28.

On December 16, 2011, EA bought the domain name "nowcast-economics.com." Grieco Declaration ¶ 9, Exh. C1-1; Pl. 56.1 Stmt. ¶ 24. Then on May 28, 2013, EA obtained U.S. trademark registrations for the marks "NOWCAST", Registration No. 4341813, and "NOW-CAST", Registration No. 4341811, *i.e.*, the Disputed Terms, relating to market analysis services. Grieco Declaration ¶ 21, Exhs. W1-W2; Guzman Declaration ¶¶ 3-4; Pl. 56.1 Stmt. ¶ 36. Those registrations both claimed November 27, 2011 as their first use date and January 25, 2012 as their first use in commerce date. Grieco Declaration ¶ 23, Exhs. W1 at 3, W2 at 3; Pl. 56.1 Stmt. ¶ 38.

4

Despite these claimed first use dates in the registrations, it remains unclear when EA began using the Disputed Terms. At her deposition, Guzman testified that EA began using the Disputed Terms at some point in "late 2011." Guzman Dep. Tr. at 43:22-44:5; Pl. 56.1 Stmt. ¶ 23. In Guzman's Declaration, she claims that EA "produced numerous emails" showing that EA contacted "potential customers and investors about EA's services" before August 29, 2012. Guzman Declaration ¶ 30. Yet EA has not cited, let alone produced, *any* evidence of communications in late 2011.[2]

It was not until 2015 that EA announced the "launch of Now-Cast" in a press release. Grieco Declaration ¶ 12, Exh. G8; Pl. 56.1 Stmt. ¶ 28. The press release described Now-Cast as "a fully-automated economic prediction platform that analyzes Big Data to monitor real-time events across the world and instantaneously calculate their economic impact on global and local economies on a live minute-by-minute basis." Grieco Declaration ¶ 12, Exh. G8 at 1; Pl. 56.1 Stmt. ¶ 27. Then on February 19, 2015, EA applied to register the trademark NOWCAST for other EA services including financial and investment consulting and analysis, and the storage of economic and financial data. Guzman Declaration. ¶ 6; Grieco Declaration ¶ 21, Exh. W3; Pl. 56.1 Stmt. ¶ 36.

### 3. Now-Casting and EA Dispute Begins

After Now-Casting asked the Trademark Trial and Appeal Board ("TTAB") on November 29, 2016 for an extension of time to oppose EA's pending application to register NOWCAST, EA sent Now-Casting a cease-and-desist letter. Grieco Declaration ¶¶ 38-39, Exhs. U1, W3; Pl. 56.1

---

[2] In responding to Now-Casting's request for "[d]ocuments sufficient to identify the date that [EA] first used each of the [disputed] Trademarks," Grieco Declaration, Exh. S1 at 7-8 (Request No. 8), EA produced no evidence responding to this request, despite claiming that it would do so, *id.* ¶ 11, Exh. S3 (EA's production log showing no documents responding to Request No. 8); Pl. 56.1 Stmt. ¶ 26.

Stmt. ¶¶ 54-55.  That letter claimed that Now-Casting was infringing EA's trademark rights in the Disputed Terms by using the terms "now-cast," "now-casts," and "now-casting."  Grieco Declaration ¶ 39, Exh. U1 at 2; Pl. 56.1 Stmt. ¶ 55.  Now-Casting's counsel responded to EA on December 23, 2016.  Grieco Declaration ¶ 40, Exh. U2; Pl. 56.1 Stmt. ¶ 55.  The response maintained that Now-Casting had used the disputed terms before EA was even formed and that the claimed terms were generic.  Grieco Declaration ¶ 40, Exh. U2 at 2; Pl. 56.1 Stmt. ¶ 55.  EA never replied to Now-Casting's letter.  Grieco Declaration ¶ 41; Pl. 56.1 Stmt. ¶ 56.

## B.    Procedural History

On March 1, 2017, Now-Casting petitioned the TTAB to oppose EA's "application to register its new NOWCAST mark (Opposition No. 91233160)" as well as "to cancel [EA's] NOWCAST mark (Cancellation No. 92065549)."  Guzman Declaration ¶ 7; *see* Grieco Declaration ¶ 42, Exhs. V1-V2; Pl. 56.1 Stmt. ¶ 57.[3]  On October 11, 2017, Now-Casting petitioned to cancel the NOW-CAST mark.  Guzman Declaration ¶ 8; Grieco Declaration, Exh. V5.  On February 22, 2018, the TTAB dismissed Now-Casting's petition for cancellation of EA's Now-Cast mark because Now-Casting did not set forth sufficient facts to plead cancellation based on genericness or descriptiveness.  Guzman Declaration ¶ 13.  In response, on March 13, 2018, Now-Casting filed an amended petition to cancel the NOW-CAST mark.  *Id.* ¶ 17.

Six days later, on March 19, 2018, Now-Casting commenced this action.  Dkt. 1 ("Compl").  In its first cause of action, Now-Casting seeks a declaratory judgment that using the Disputed Terms does not violate EA's rights under 15 U.S.C. §§ 1114 or 1125.  *Id.* ¶¶ 64-66.  In its second and third causes of action, Now-Casting asks the Court to direct the USPTO to cancel

---

[3] The TTAB proceedings have been stayed pending the outcome of this case.  Grieco Declaration ¶ 43, Exhs. V1-V5; Pl. 56.1 Stmt. ¶ 58.

EA's trademark registrations for the Disputed Terms under 15 U.S.C. § 1119. *Id.* ¶¶ 67-76. In its fourth cause of action, Now-Casting requests a permanent injunction restraining EA from interfering with Now-Casting's use of the Disputed Terms and other related terms. *Id.* ¶¶ 77-81.

On June 22, 2018, EA filed its answer and counterclaims against Now-Casting, Dkt. 28, which it amended on August 21, 2018, Dkt. 36 ("Answer"). EA also joined twelve federal reserve banks and the board of governors for the federal reserve as third-party defendants (the "Federal Reserve Banks"). *Id.* at 21-30. EA counterclaimed against Now-Casting for (1) trademark infringement under 15 U.S.C. §§ 1114, 1116, and 1117, *id.* at 18-19 ¶¶ 29-33, (2) common law trademark infringement and unfair competition, *id.* at 19-20 ¶¶ 34-40, (3) false designation of origin under 15 U.S.C. § 1125(a), *id.* at 20 ¶¶ 41-43, and (4) deceptive business practices under New York General Business Law section 349, *id.* at 20-21 ¶¶ 44-47.

On December 21, 2018, Now-Casting moved for judgment on the pleadings, Dkt. 64, and the Federal Reserve Banks moved to dismiss, Dkt. 66. The Honorable Edgardo Ramos, to whom this case was formerly assigned, denied Now-Casting's motion and granted the Federal Reserve Banks' motion. *See Now-Casting Econ., Ltd. v. Econ. Alchemy LLC*, No. 18 Civ. 2442 (ER), 2019 WL 4640219 (S.D.N.Y. Sept. 24, 2019). With respect to Now-Casting's motion, Judge Ramos determined that Now-Casting had not made a sufficient showing that "drawing all reasonable inferences in favor of [EA], it is apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to relief." *Id.* at *3 (citing *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994)). In particular, the court determined that Now-Casting's reference to numerous "books, articles, courses, conferences, job listings, [and] resumes" in its pleadings in support of an argument that the Disputed Terms were not distinctive enough to merit trademark protection were insufficient to overcome the presumption that EA's then-registered trademarks in the Disputed

Terms were valid and distinctive. *Id.* at *5-6. Further, Judge Ramos held that factual disputes between EA's and Now-Casting's pleadings prevented the court from determining at that stage whether the Disputed Terms were generic or whether they had acquired secondary meaning. *Id.* at *4, 6.

A little over a year later, on January 3, 2020, the USPTO cancelled EA's registrations for the NOWCAST and NOW-CAST marks because EA failed to file the required Declaration of Use. Grieco Declaration ¶ 24, Exhs. W1 at 1, W2 at 1; Pl. 56.1 Stmt. ¶ 39. This means that EA has no valid U.S. trademark registration for either of the Disputed Terms. Grieco Declaration ¶ 24; Pl. 56.1 Stmt. ¶ 39.

On October 5, 2020, this case was reassigned to the undersigned. On November 12, 2021, Now-Casting and EA each moved for summary judgment. Dkt. 134; Dkt. 136. EA moves for summary judgment with respect to Now-Casting's declaratory judgment claim, Dkt. 135 ("EA SJ Motion") at 1, while Now-Casting moves for summary judgment with respect to its declaratory judgment claim and each of EA's counterclaims, Dkt. 138 ("Now-Casting SJ Motion") at 1. As both parties agree that the invalidation of EA's trademark registrations moots Now-Casting's second and third causes of actions to cancel the trademark registrations for the Disputed Terms and Now-Casting has agreed "to withdraw its cause of action for a permanent injunction without prejudice," EA SJ Motion at 1; Dkt. 188 ("Now-Casting SJ Opp.") at 1 n.1, only Now-Casting's declaratory judgment claim remains. Similarly, EA's first counterclaim for trademark infringement pursuant to 15 U.S.C. § 1114 is no longer at issue given that "[i]t is undisputed that Defendant no longer holds registrations" for the Disputed Terms. EA SJ Motion at 4.[4] Therefore,

---

[4] Accordingly, the Court dismisses Now-Casting's second, third, and fourth causes of action and EA's first counterclaim without prejudice.

EA's remaining counterclaims are for common law trademark infringement and unfair competition, false designation of origin under 15 U.S.C. § 1125(a), and deceptive business practices under New York General Business Law section 349.

On January 7, 2022, Now-Casting moved under Federal Rule of Civil Procedure 11 for sanctions against EA and its counsel, Dkt. 203, accusing them of "asserting . . . patently frivolous Counterclaims," Dkt. 204 ("Rule 11 Motion") at 3. In its opposition, EA asks the Court to order recovery of its fees for responding to Now-Casting's sanctions motion. Dkt. 210 ("Rule 11 Opp.") at 16.

## II. Legal Standard

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). While courts "are required to resolve all ambiguities and draw all permissible factual inferences in favor of [the non-moving party], conclusory statements, conjecture, or speculation by the party resisting the motion will not defeat summary judgment." *Flores v. United States*, 885 F.3d 119, 122 (2d Cir. 2018) (alteration in original) (citations and internal quotation marks omitted). "Rule 56(c) of the Federal Rules of Civil Procedure mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *El-Nahal v. Yassky*, 835 F.3d 248, 252 (2d Cir. 2016) (citations and internal quotation marks omitted).

## III. Discussion

### A. Threshold Questions

#### 1. Subject Matter Jurisdiction

EA argues that the Court lacks subject matter jurisdiction over Now-Casting's only remaining claim for a declaratory judgment. *See* EA SJ Motion at 5-7; Dkt. 192 ("EA SJ Opp.")

at 6-7. "The objection that a federal court lacks subject matter jurisdiction, see Fed. Rule Civ. Proc. 12(b)(1), may be raised by a party, or by a court on its own initiative, at any stage in the litigation, even after trial and the entry of judgment." *Arbaugh v. Y&H Corp.,* 546 U.S. 500, 506 (2006). Rule 12(h)(3) instructs: "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). "The standard governing a Rule 12(h)(3) motion is the same as that governing a motion under Rule 12(b)(1)." *Bell v. Ramirez*, No. 13 Civ. 7916 (PKC), 2014 WL 7178344, at *2 (S.D.N.Y. Dec. 9, 2014) (first citing *Greystone Bank v. Tavarez*, No. 09 Civ. 5192 (SLT), 2010 WL 3325203, at *1 (E.D.N.Y. Aug. 19, 2010), then citing *Peterson v. Cont'l Airlines, Inc.,* 970 F. Supp. 246, 248-49 (S.D.N.Y. 1997)); *see also Gallagher v. Sullivan*, No. 15 Civ. 1327 (TJM/TWD), 2018 WL 4610677, at *1 n.2 (N.D.N.Y. Apr. 23, 2018).

On a Rule 12(b)(1) motion, a court must dismiss a claim if it "lacks the statutory or constitutional power to adjudicate it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (citation omitted), *aff'd*, 561 U.S. 247 (2010). "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Aurecchione v. Schoolman Transp. Sys., Inc.,* 426 F.3d 635, 638 (2d Cir. 2005) (citation omitted); *see also Liranzo v. United States*, 690 F.3d 78, 83-84 (2d Cir. 2012) (applying this rule where a party moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(h)(3) five days before trial). Courts take the uncontroverted facts of the complaint as true, but "[w]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (alteration in original) (quoting *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003)).

The Declaratory Judgment Act permits a district court, "[i]n a case of actual controversy within its jurisdiction," to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III" of the Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (citation omitted). An action seeking declaratory relief satisfies the case-or-controversy requirement, and thus triggers federal jurisdiction, if the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests," and is "real and substantial," such that it "admit[s] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (citation, brackets in original, and internal quotation marks omitted). So "when determining declaratory judgment jurisdiction," federal courts "often look to the character of the threatened action." *Medtronic Inc. v. Mirowski Fam. Ventures, LLC,* 571 U.S. 191, 197 (2014) (citation and internal quotation marks omitted). Or said differently, courts look to whether "a coercive action brought by the declaratory judgment defendant . . . would necessarily present a federal question." *Id.* (citation and internal quotation marks omitted).

EA argues first that this Court lacks subject matter jurisdiction over Now-Casting's declaratory judgment claim by citing *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265 (2d Cir. 1974), a case which involved a trademark dispute between two perfume manufacturers.[5] There, the plaintiff requested declaratory relief, damages, permission to

---

[5] EA also argues that it has "located no declaratory judgment decision in this Circuit where subject matter jurisdiction was predicated solely on a common law or [section] 43(a) claim." EA SJ Motion at 6. Besides the fact that EA points to no reason why a section 43(a) claim would differ from any other claim under federal law, Now-Casting points the Court to a decision in this

import its products, and cancellation of the defendant's registered trademark. *Id.* at 1269. The registration for the disputed trademark expired by the trial, which mooted the plaintiff's claims involving the registered trademarks. *Id.* at 1270. On appeal, the plaintiff reformulated its claim as a request for a declaratory judgment that the defendant had no rights to the trademark. *Id.* The Second Circuit noted that the claim for declaratory relief "does not arise under the Lanham Act if [the] only remaining trademark claim stems from common law rights." *Id.* And in a footnote, the court explained that it "has long held that the Lanham Act does not provide jurisdiction or a substantive remedy for general common law unfair competition claims." *Id.* at 1270 n.5 (collecting cases).

But *La Societe* was decided fourteen years before Congress explicitly created a right of action for unregistered trademarks under section 1125(a). *See* Trademark Law Revision Act of 1988, Pub. L. No. 100–667, § 132, 102 Stat. 3935, 3946 (codified at 15 U.S.C. § 1125(a)); *see also Matal v. Tam*, 137 S. Ct. 1744, 1752 (2017) ("[E]ven if a trademark is not federally registered, it may still be enforceable under § 43(a) of the Lanham Act, which creates a federal cause of action for trademark infringement." (citation omitted)). Now, an unregistered trademark claim explicitly can be brought under section 1125(a). Because jurisdiction would exist in an unregistered trademark infringement claim under section 1125(a), it also can exist in a declaratory judgment claim for noninfringement under that section since "a coercive action brought by the declaratory

---

District in which subject matter jurisdiction was based solely on a declaratory judgment claim for noninfringement. *See* Now-Casting SJ Opp. at 11 (citing *Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 437-38 (S.D.N.Y. 2016)).

judgment defendant" for infringement under section 1125(a) "would necessarily present a federal question."[6] *Medtronic*, 571 U.S. at 197 (citations and internal quotation marks omitted).

The question therefore becomes whether Now-Casting has presented a valid declaratory judgment claim relying on section 1125(a). Federal courts may generally hear cases asking for declarations of trademark noninfringement. In doing so, a court must ask "whether the plaintiff engaged in a course of conduct which has brought it into adversarial conflict with the defendant." *Saleh v. Sulka Trading Ltd.*, 957 F.3d 348, 354 (2d Cir. 2020) (citation and internal quotation marks omitted). That means that the plaintiff must "adequately allege that he or she has engaged in a course of conduct evidencing a definite intent and apparent ability to commence use of the marks on the product." *Id.* (citation and internal quotation marks omitted). Allegations that a potential infringer "is prepared to sell products bearing the . . . mark in the United States" suffice. *Id.* at 355.

Now-Casting has alleged facts and provided additional evidence properly before the Court that sufficiently establish by a preponderance of the evidence this Court's subject matter jurisdiction.[7] Now-Casting alleges that it "began using the Now-Casting Economics Ltd. name in the United States since at least as early as May 2011." Compl. ¶ 9. It marketed to at least forty-

---

[6] EA appears to argue as well that Now-Casting's declaratory judgment claim is ambiguous as to whether it derives from state or federal trademark law. EA SJ Motion at 6 (citing *TV Vues Advert. Agency, Inc. v. Boro Park View*, LLC, No. 19 Civ. 5583 (RRM) (RLM), 2019 WL 7580096, at *4 (E.D.N.Y. Dec. 20, 2019), *report and recommendation adopted by* 2020 WL 207785 (E.D.N.Y. Jan. 14, 2020) ("Because the face of plaintiff's Complaint is ambiguous as to whether plaintiff is asserting a claim under federal or state law, and as plaintiff promptly made clear its intent to limit its claims to those available under state law, this Court concludes that plaintiff's Complaint does not raise a federal question, and therefore, does not support removal.") (footnote omitted)). If EA is making such an argument, it is rejected. Now-Casting's Complaint is clear that its claim is based in federal law. *See, e.g.*, Compl. at 43.

[7] EA has not contested any of the facts relevant to the Court's subject matter jurisdiction analysis.

13

two United States customers in 2011.  McMahon Declaration ¶ 10, Exhs. B3-B81; Pl. 56.1 Stmt.

¶ 16.  It actually conducted business via its subscription service with three of those customers.

McMahon Declaration ¶ 12; Pl. 56.1 Stmt. ¶ 17.  These actions indicated that, at least in 2011,

Now-Casting was prepared to sell products bearing the marks in the United States.

While the record is less fulsome as to Now-Casting's current and likely future conduct in

the United States, EA's own actions prior to the commencement of this action—by sending Now-

Casting a cease-and-desist letter—demonstrate that Now-Casting engaged in a course of conduct

that brought it into adversarial conflict with EA.  Courts in this District have held that a cease-and-

desist letter threatening litigation over a trademark may create a controversy addressable through

a declaratory judgment.  *See Sasson v. Hachette Filipacchi Presse*, No. 15 Civ. 194 (VM) (SN),

2016 WL 1599492, at \*3-4 (S.D.N.Y. Apr. 20, 2016); *Classic Liquor Imps., Ltd.*, 151 F. Supp. 3d

451, 457 (S.D.N.Y. 2015); *Gelmart Indus., Inc. v. Eveready Battery Co.*, 120 F. Supp. 3d 327,

331-32 (S.D.N.Y. 2014).  EA's December 12, 2016 cease-and-desist letter made such a threat:  If

Now-Casting "fail[ed] to cooperate" with EA's demands, including that Now-Casting cease using

the Disputed Terms and transfer the domain name "www.now-casting.com" to EA, EA would "be

prepared to pursue [its] claims against [Now-Casting] in a court of law."  Grieco Declaration ¶ 39,

Exh. U-1.[8]

Nor have the actions of the parties resolved this controversy.  EA has not, for instance,

filed a covenant saying that it will never enforce its unregistered trademark claims against Now-

Casting.  *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 88 (2013) (holding that "a covenant not to

---

[8] To the extent EA's jurisdictional arguments state that there is no controversy in this case sufficient to grant the Court jurisdiction, EA "cannot pretend now that [its] notices to [Now-Casting] were 'just kidding'" in an attempt to dismiss the case.  *Lee v. Makhnevich*, No. 11 Civ. 8665 (PAC), 2013 WL 1234829, at \*4 (S.D.N.Y. Mar. 27, 2013).

enforce a trademark against a competitor's existing products and any future colorable imitations moots the competitor's action to have the trademark declared invalid" (internal quotation marks omitted)). Indeed, EA continues to press its counterclaims, though it acknowledges that those counterclaims would be dismissed if this Court were to conclude it lacks jurisdiction over Now-Casting's claim. EA SJ Motion at 7.

For the above reasons, EA's arguments challenging the Court's subject matter jurisdiction over Now-Casting's remaining declaratory judgment claim fail.

### 2. Contradictory Theories of Recovery

EA also argues that Now-Casting is improperly seeking summary judgment on inconsistent grounds, *i.e.*, that the Disputed Terms are generic but, if the Court were to find them non-generic, then Now-Casting used them first. *See* EA SJ Motion at 7. According to EA, Now-Casting has "waived any claim to senior trademark rights in the subject marks because it has consistently argued that the marks are generic and not amenable to protection as trademarks." EA SJ Opp. at 8. This argument fails to appreciate the parties' respective burdens at trial.

As Now-Casting argues, EA ultimately bears the burden of proving that Now-Casting infringed EA's unregistered trademarks as the declaratory judgment defendant. Now-Casting SJ Motion at 11 n.2, 12-13, 22-23; Now-Casting SJ Opp. at 20-22; *see Noval Williams Films LLC v. Branca*, No. 14 Civ. 4711 (PAC), 2018 WL 389092, at *3 (S.D.N.Y. Jan. 11, 2018) ("[T]he declaratory judgement defendant has to establish infringement as a matter of law. Since an element of a copyright infringement claim is copyright ownership, the declaratory judgment defendant must establish the copyright ownership *as a matter of law*, if she is to prevail on summary judgment." (citation omitted)); *Classic Liquor Imps., Ltd.*, 201 F. Supp. 3d at 440 (explaining that "declaratory judgment plaintiffs do not have the burden of proving non-infringement" (citing *Medtronic*, 571 U.S. at 198-99)); *see also Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 291 (2d

Cir. 1999) (discussing the district court's realignment of the declaratory judgment action plaintiff and defendant since the burden of proof was only on the defendant). Now-Casting's assertions about the genericness of the Disputed Terms and its claim to be the prior trademark user are thus better thought of as attacks on EA's infringement claim rather than, as EA characterizes them, "theories of recovery." EA SJ Motion at 7. As detailed below, for EA to prevail on its section 1125(a) counterclaim and to defeat Now-Casting's declaratory judgment claim, it must show that the Disputed Terms are "protectable, and that [it] has engaged in 'prior use and ownership.'" *De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006) (quoting *Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)). Ultimately it is EA that must establish that it was the prior user of a valid mark in order to prevail in opposing Now-Casting's declaratory judgment claim, regardless of Now-Casting's arguments.

**B.** **Section 1125(a) and Common Law Claims**

The Court now turns to whether Now-Casting infringed EA's trademark rights through its use of the Disputed Terms. Section 1125(a) "protects unregistered trademarks from infringement." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc.*, 228 F.3d 56, 61 (2d Cir. 2000) (citation omitted). It does so by prohibiting "any person from using in commerce, in connection with any goods, 'any word, term, name, symbol, or device, or any combination thereof which is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of his or her goods by another person.'" *Id.* (quoting 15 U.S.C. § 1125(a)(1)) (alterations omitted). In determining whether "an unregistered mark is entitled to protection under" section 1125(a), "the general principles qualifying a mark for registration under § 2 of the Lanham Act are for the most part applicable." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992) (citation omitted). The main difference is that the owner of the unregistered mark does not benefit

16

from the presumption of validity created by federally registering the mark. *See Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 166 (2d Cir. 2016) ("[W]here 'the mark is not registered,' the burden is on the proponent to 'prove that its mark is a valid trademark.'" (quoting *Reese Publ'g Co. v. Hampton Int'l Commc'ns, Inc.*, 620 F.2d 7, 11 (2d Cir. 1980))).

Under these general principles, a party "will prevail on the merits of its unregistered trademark infringement claim if it can show that it has a valid trademark entitled to protection and that the defendant's use of it is likely to cause confusion." *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) (cleaned up); *accord 1-800 Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005). "Preliminary to making this showing, however, a plaintiff must demonstrate its own right to use the mark . . . in question." *ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007) (citations omitted). A party owns the mark in question if it "made the first use of the mark to identify his goods or service and continues to use the mark commercially." *Dual Groupe, LLC v. Gans-Mex LLC*, 932 F. Supp. 2d 569, 573 (S.D.N.Y. 2013) (citing *ITC Ltd.*, 482 F.3d at 147) (additional citation omitted).

Once the party asserting trademark protection meets its burden to show that it owns the mark in question, that party must then meet its burden to show that the mark is protectable. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 308 (S.D.N.Y. 2012). For an unregistered mark to be protectable under section 1125(a), the "mark must be sufficiently distinctive to distinguish the registrant's goods from those of others." *Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 454 F.3d 108, 116 (2d Cir. 2006) (citation and internal quotation marks omitted). "The degree to which a mark is entitled to protection under the Act depends on whether the mark is classified as (a) generic, (b) descriptive, (c) suggestive, or (d) fanciful or arbitrary." *Estee Lauder v. Gap, Inc.*, 108 F.3d 1503, 1508 (2d Cir. 1997) (citation

17

omitted). Generic marks are unprotectable, and descriptive marks are protectable only when they acquire a "secondary meaning." *Playtex Prods., Inc. v. Ga.–Pac. Corp.,* 390 F.3d 158, 163 (2d Cir. 2004). As to EA's common law counterclaims, the "legal standards are 'virtually identical' to the standards for trademark infringement and unfair competition under the Lanham Act, except that New York common law claims 'require an additional showing of bad faith.'" *Lopez v. BigCommerce, Inc.*, No. 16 Civ. 8970 (JPO), 2017 WL 3278932, at *4 (S.D.N.Y. Aug. 1, 2017) (quoting *TechnoMarine SA v. Jacob Time, Inc.*, No. 12 Civ. 790 (KBF), 2012 WL 2497276, at *5 (S.D.N.Y. June 22, 2012)). A party that fails to prevail on its Lanham Act claims thus cannot prevail on New York common law claims for infringement and unfair competition. *Id.*

Again, the burden here rests with EA to prove that its trademarks are protectable because "declaratory judgment plaintiffs do not have the burden of proving non-infringement." *Classic Liquor Imps., Ltd.*, 201 F. Supp. 3d at 440 (citing *Medtronic,* 571 U.S. at 198-99). EA has presented no evidence that the Disputed Terms are sufficiently distinctive to merit protection as unregistered trademarks.[9] Instead, EA's briefing focuses on arguing that Now-Casting has not demonstrated that the Disputed Terms are generic or merely descriptive. EA SJ Motion at 10-12; EA SJ Opp. at 9-14. Again, EA has the argument backwards. At summary judgment for a declaratory judgment claim for non-infringement where there is no genuine issue of material fact,

---

[9] The closest EA comes to presenting such evidence is in the "Reply Declaration of Giselle Guzman," which states that EA has produced "scores of documents" from dictionaries which do not list the Disputed Terms or which list them related only to weather forecasting and citing some of those dictionary entries. Dkt. 201 at ¶ 23. Setting aside the question of whether this statement establishes a genuine issue of material fact as to the protectability of the Disputed Terms, the Court will not consider evidence or arguments available at the time of the parties' original submissions but not submitted until a reply. *See Tolliver v. McCants*, No. 05 Civ. 10840 (JFK), 2009 WL 1473445, at *3 (S.D.N.Y. May 26, 2009) (citing *Playboy Enters., Inc., v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997)); *Tetra Techs., Inc. v. Harter*, 823 F. Supp. 1116, 1120 (S.D.N.Y. 1993).

it is the defendant who must show that its mark is protectable, not the plaintiff who must show that it is not. *See Noval Williams Films,* 2018 WL 389092, at *3 ("[T]he declaratory judgement defendant has to establish infringement as a matter of law. Since an element of a copyright infringement claim is copyright ownership, the declaratory judgment defendant must establish the copyright ownership *as a matter of law*, if she is to prevail on summary judgment."). EA's argument that distinctiveness is an issue for the trier of fact similarly ignores its failure to present any evidence on this issue. *See* EA SJ Motion at 12.

EA further argues that its trademarks are protectable because of the presumption of validity and distinctiveness afforded to registered trademarks. EA SJ Motion at 10-12. This presumption, however, no longer applies following the cancellation of EA's registered trademarks. *See Advance Mag. Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 114 n.2 (S.D.N.Y. 2008) (explaining that the presumption of inherent distinctiveness no longer applies following cancellation); *W.R. Grace & Co. v. Union Carbide Corp.*, 581 F. Supp. 148, 152 n.7 (S.D.N.Y. 1983) ("Cancellation of plaintiff's mark thus shifts the burden in the infringement action from defendant to plaintiff . . . .").[10]

EA also incorrectly argues that, given Judge Ramos's decision on Now-Casting's motion for judgment on the pleadings, the law of the case doctrine requires that the marks continue to be presumed valid following their cancellation. EA SJ Motion at 10-11; EA SJ Opp. at 9. That

---

[10] The cases that EA cite are not to the contrary. *See* EA SJ Motion at 12. For instance, in *Rodgers v. Wright*, 544 F. Supp. 2d 302 (S.D.N.Y. 2008), the trademark at issue had been re-registered following its expiration. *Id.* at 306. Nor does *Fusco Group, Inc v. Loss Consultants International, Inc.*, 462 F. Supp. 2d 321 (N.D.N.Y. 2006), stand for a wide-reaching proposition that a trademark cancellation "is of no consequence." EA SJ Opp. at 15 (quoting *Fusco Grp.*, 462 F. Supp. 2d at 328-29). In *Fusco*, the trademark was re-registered prior to the litigation and, more to the point, the court determined that the cancellation was "of no consequence" specifically with respect to whether the trademark holder could establish prior use when it had also maintained use of the trademark throughout the period of cancellation. *Fusco Grp.*, 462 F. Supp. 2d at 328-29.

doctrine demands that "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983) (citation omitted). The issues presented in the motion for judgment on the pleadings and the current motion are not the same, however. In resolving Now-Casting's motion for judgment on the pleadings, Judge Ramos determined that Now-Casting had not made a sufficient showing in the pleadings to overcome the presumption that EA's *registered* trademarks were valid. *See Now-Casting Econ.*, 2019 WL 4640219, at *3-6. The issue now before the Court is whether EA, no longer entitled to any presumption of validity or distinctiveness, has presented any evidence of the distinctiveness of its marks. It has not.[11]

EA's contention that "the Court may find that [EA] could not have maintained an action for infringement against [Now-Casting]" since the Lanham Act does not apply extraterritorially to a foreign party's foreign activities, EA SJ Motion at 6-7, does not help its case.[12] The

---

[11] Similarly, it is of no consequence that much of Now-Casting's evidence as to distinctiveness resembles what it presented previously for judicial notice in its motion for judgment on the pleadings. *See Now-Casting Econ.*, 2019 WL 4640219, at *5-6. At that stage of the case, the burden was on Now-Casting to prove the absence of any set of facts, accepting the pleadings as true, that would prove the validity of EA's trademarks in the Disputed Terms, which at the time were registered. Now-Casting's inability to make that showing hardly means that EA has now made the opposite showing of validity at the summary judgment stage, particularly with respect to trademarks that are now not registered.

[12] It is not clear if EA is making a jurisdictional or merits argument here. As stated below, the question of the extraterritorial application of the Lanham Act is generally not a jurisdictional issue. In any event, any subject matter jurisdiction challenge on extraterritorial grounds is rejected largely for reasons already discussed. While purely extraterritorial conduct may give rise to such a remote possibility of liability that a declaratory judgment claim could not be brought because the conduct presents no actual case or controversy justiciable under Article III, *see Saleh*, 957 F.3d at 355-57, Now-Casting's conduct is not purely extraterritorial. As discussed above, *see supra* III.A.1, Now-Casting has used the Disputed Marks to market its services in the United States—including by having employees travel to the United States to talk with U.S. customers—and it has made sales to three U.S. companies using the Disputed Terms. McMahon Declaration ¶¶ 9-12, Exhs. B3-B81; Dkt. 141 ¶¶ 24-26; Pl. 56.1 Statement ¶¶ 16-17; *see Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000) ("Trademark infringement occurs where the

extraterritorial application of the Lanham Act is generally a merits question that must be proven in establishing infringement. *See Hetronic Int'l, Inc. v. Hetronic Ger. GmbH*, 10 F.4th 1016, 1040 (10th Cir. 2021) (explaining that the question of the extraterritorial reach of the Lanham Act goes to the merits, not subject matter jurisdiction); *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 963 (9th Cir. 2016) ("[W]e hold that the extraterritorial reach of the Lanham Act raises a question relating to the merits of a trademark claim, not to federal courts' subject-matter jurisdiction."); *Int'l Diamond Imps., Inc. v. Med Art, Inc.*, No. 15 Civ. 4045 (KMW), 2016 WL 1717217, at *1 (S.D.N.Y. Apr. 27, 2016) ("[T]he issue of extraterritorial limitations [is] an element of the [Lanham Act] claim, not a predicate for subject matter jurisdiction." (citation omitted)); *see also Morrison*, 561 U.S. at 254 (explaining that whether a statute reaches foreign conduct is a merits question, not a jurisdictional question); *United States v. Miranda*, 780 F.3d 1185, 1191 (D.C. Cir. 2015) ("The extraterritorial reach of a statute ordinarily presents a merits question, not a jurisdictional question."). Since EA has come forward with no evidence demonstrating the protectability of the Disputed Terms anywhere, EA has come forward with no evidence in support of infringement either in the United States or abroad.

In the absence of any evidence presented by EA as to the distinctiveness and protectability of its mark, there is no genuine issue of material fact as to the issue of distinctiveness or protectability in any market. Therefore, Now-Casting's motion for summary judgment on its Declaratory Judgment Act claim and EA's federal and common law trademark counterclaims is granted, and EA's motion is denied.

---

attempted passing off of an infringing mark occurs." (citations omitted)). Nor, as discussed, are Now-Casting's actions the only conduct taken into account in assessing whether a case or controversy exists in this action.

## C.    New York General Business Law Section 349 Counterclaim

Next, the Court turns to Now-Casting's motion for summary judgment on EA's counterclaim under New York General Business Law section 349.  EA has offered no arguments opposing Now-Casting's motion as to this claim.  *See generally* EA SJ Opp.

As an initial matter, because EA does not appear to oppose summary judgment as to its section 349 claim, that claim is deemed abandoned.  *See Kovaco v. Rockbestos-Surprenant Cable Corp.*, 834 F.3d 128, 143 (2d Cir. 2016) ("[W]hen a counseled party moves for summary judgment, 'a partial response [by the non-movant] arguing that summary judgment should be denied as to some claims while not mentioning others may be deemed an abandonment of the unmentioned claims.'" (quoting *Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2014))); *Hardy v. City of New York*, 732 F. Supp. 2d 112, 125 (E.D.N.Y. 2010) ("Federal courts have the discretion to deem a claim abandoned 'when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way.'" (citation omitted)); *Dineen ex rel. Dineen v. Stramka*, 228 F. Supp. 2d 447, 454 (S.D.N.Y. 2002) (noting that the plaintiff's failure to address the defendant's claims in opposition to summary judgment "enabl[es] the Court to conclude that [the plaintiff] has abandoned them" (citation omitted)).  In any event, the Court will explain why, on the merits, summary judgment in favor of Now-Casting on this claim is warranted.

"Section 349 of the [NY]GBL provides a cause of action for any person injured by '[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or [sic] any service.'"  *Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020) (quoting N.Y. Gen. Bus. Law § 349 (McKinney 2022)).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at

22

consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Id.* (quoting *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000)). "The prevailing view in the Second Circuit is that trademark infringement claims are not cognizable under § 349 unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Shandong Shinho Food Indus. Co. v. May Flower Int'l, Inc.*, 521 F. Supp. 3d 222, 263 (E.D.N.Y. 2021) (cleaned up) (quoting *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012)). "[T]he elements for alleging false advertising and infringement under the General Business Law are otherwise similar to Lanham Act claims." *Chanel, Inc., v. RealReal, Inc.*, 449 F. Supp. 3d 422, 446 (S.D.N.Y. 2020) (quoting *Weight Watchers Int'l, Inc. v. Noom, Inc.*, 403 F. Supp. 3d 361, 381 (S.D.N.Y. 2019)).

As previously discussed, EA has failed to establish the elements of trademark infringement under the Lanham Act. Nor does the record reflect any deceptive or misleading acts for which Now-Casting may be liable. Furthermore, as noted, injuries against private parties alone are not actionable under section 349. "Corporate competitors may bring claims under § 349(a) only if 'some harm to the public at large is at issue.'" *LVL XIII Brands, Inc., v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 678 (S.D.N.Y. 2016) (quoting *Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 264 (2d Cir. 1995)); *see also Gucci America, Inc. v. Duty Free Apparel, Ltd.*, 277 F. Supp. 2d 269, 273 (S.D.N.Y. 2003) ("Commercial claimants under § 349 must allege conduct that has 'significant ramifications for the public at large' in order to properly state a claim." (quoting *Shred-It USA, Inc. v. Mobile Data Shred, Inc.*, 228 F. Supp. 2d 455, 465 (S.D.N.Y. 2002))). Here, no evidence has been presented to suggest that Now-Casting's purportedly prohibited conduct has caused an actionable "public harm." *LVL XIII Brands,* 209 F. Supp. 3d at 679 (internal quotation marks omitted).

Therefore, Now-Casting is entitled to summary judgment with respect to EA's counterclaim under New York General Business Law section 349.

## D. Rule 11 Sanctions

Having granted Now-Casting's motion for summary judgment and denied EA's motion for summary judgment, the Court turns to the parties' requests for sanctions under Federal Rule of Civil Procedure 11. Now-Casting claims that EA violated Rule 11 by asserting counterclaims in its Answer without properly investigating whether EA had used the Disputed Terms before Now-Casting. Rule 11 Motion at 1. It also claims that EA violated Rule 11 because, after discovering Now-Casting's prior use, EA did not withdraw its counterclaims despite not "identif[ying] even one document or any other evidence demonstrating senior use of the Disputed Terms" and "bearing the burden" to show first use. *Id.* at 2. EA opposes the Rule 11 Motion and asks for its fees under Federal Rule of Civil Procedure 11(c)(2) in connection with opposing the motion. Rule 11 Opp. at 17.

### 1. Legal Standard

Rule 11 requires an attorney to certify that (1) a pleading "is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," (2) "the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and (3) "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). Under Rule 11, a party must make a motion for sanctions separately from any other motion. *Id.* 11(c)(2). It must then serve the motion on the opposing party, after which it must give the opposing party twenty-one days to "withdraw[] or appropriately correct[]" "the challenged paper, claim, defense, contention, or denial." *Id.* The requirement that

24

the adverse party be afforded twenty-one days to remediate or withdraw the allegedly sanctionable filing is commonly known as Rule 11's safe harbor provision and is a "strict procedural requirement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 175 (2d Cir. 2012) (citation omitted).

When a party has complied with the safe harbor requirements, sanctions are appropriate against the adverse party only after "a showing of objective unreasonableness on the part of the attorney or client signing the papers." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009) (citation and internal quotation marks omitted). "The appropriateness of sanctions is distinct from the underlying merits of a claim." *Int'l Techs. Mktg., Inc. v. Verint Sys., Ltd.*, No. 15 Civ. 2457 (GHW), 2019 WL 1244493, at *7 (S.D.N.Y. Mar. 18, 2019) (citation omitted), *vacated in part*, 991 F.3d 361 (2d Cir. 2021), *and aff'd in part*, 850 F. App'x 38 (2d Cir. 2021). A pleading "violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith." *Manhattan Enter. Grp., LLC v. Higgins*, No. 18 Civ. 6396 (VSB), 2019 WL 4601524, at *2 (S.D.N.Y. Sept. 22, 2019) (citation and internal quotation marks omitted), *aff'd*, 816 F. App'x 512 (2d Cir. 2020). "[T]o constitute a frivolous legal position for purposes of Rule 11 sanction, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands." *Simon DeBartolo Grp. L.P. v. Richard E. Jacobs Grp., Inc.*, 186 F.3d 157, 167 (2d Cir. 1999) (quoting *Mareno v. Rowe*, 910 F.2d 1043, 1047 (2d Cir. 1990)).

The 1993 Advisory Committee Note to Rule 11 lays out several possible considerations for deciding whether to impose sanctions: (1) "[w]hether the improper conduct was willful, or negligent;" (2) "whether it was part of a pattern or activity, or an isolated event;" (3) "whether it infected the entire pleading, or only one particular count or defense;" (4) "whether the person has

engaged in similar conduct in other litigation;" (5) "whether it was intended to injure;" (6) "what effect it had on the litigation process in time or expense;" (7) "whether the responsible person is trained in the law;" (7) "what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case;" and (8) "what amount is needed to deter similar activity by other litigants." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment; *see VeroBlue Farms USA Inc. v. Canaccord Genuity LLC*, No. 20 Civ. 4394 (JPC), 2021 WL 3913555, at *15 (S.D.N.Y. Sept. 1, 2021), *aff'd*, No. 21-2465-cv, 2022 WL 2133780 (2d Cir. June 14, 2022).

Given "concern for encouraging zealous advocacy," "[c]ourts maintain a high bar for establishing a Rule 11 violation." *E. Gluck Corp. v. Rothenhaus*, 252 F.R.D. 175, 179 (S.D.N.Y. 2008). Sanctions are appropriate under Rule 11 only "where it is patently clear that a claim has absolutely no chance of success." *Weinraub v. Glen Rauch Sec. Inc.*, 399 F. Supp. 2d 454, 460 (S.D.N.Y. 2005) (quoting *Caisse Nationale de Credit Agricole–CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994)). And even if the Court finds that a party has met this high bar, "the decision whether or not to impose sanctions is a matter for the court's discretion." *Perez v. Posse Comitatus*, 373 F.3d 321, 325 (2d Cir. 2004).

### 2. Rule 11's Safe Harbor Provision

To begin, the Court finds that Now-Casting satisfied Rule 11's safe harbor provision. Now-Casting served EA with its Rule 11 notice on November 17, 2021. *See* Dkt. 197 at 3. And in response, EA did not withdraw or otherwise amend the allegedly offending papers within the subsequent twenty-one days.

As for EA's request for legal fees to defend the Rule 11 Motion, Now-Casting claims that the request is improper because the request did not comply with Rule 11's safe harbor requirement. Dkt. 211 at 9. That argument misunderstands the law for this posture. "Although [EA] has not

filed a separate cross-motion for sanctions and has not afforded [Now-Casting] 21 days after service of such a motion to withdraw its submissions, '[a] party defending a Rule 11 motion need not comply with the separate document and safe harbor provision when counter-requesting sanctions.'" *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 421 (S.D.N.Y. 2003) (final alteration in original) (quoting *Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001)); *see also* Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment ("[S]ervice of a cross motion under Rule 11 should rarely be needed since under the revision the court may award to the person who prevails on a motion under Rule 11—whether the movant or the target of the motion— reasonable expenses, including attorney's fees, incurred in presenting or opposing the motion."). The Court will therefore consider the merits of both Now-Casting's Rule 11 Motion and EA's request for its legal fees for opposing that motion.

### 3. Merits

Now-Casting argues that, with respect to the factual issue of prior use, EA failed to "conduct a reasonable inquiry into the validity of a pleading before it is signed." Rule 11 Motion at 7 (citing *Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998)). Now-Casting additionally contends that it was "objectively unreasonable for EA and its counsel to continue to persist in their pursuit of these Counterclaims after discovery, in complete disregard of evidence Plaintiff produced showing that Now-Casting has senior use of the Disputed Terms." *Id.* at 10.

EA's counterclaims and subsequent litigation positions did not violate Rule 11(b) and the Court finds, as a matter of discretion, that sanctions are unwarranted even if they did. Resolving all doubts in favor of EA, EA's filing of its counterclaims and continued pursuit of those claims do not present an "extreme case[]," *Sorenson v. Wolfson*, 170 F. Supp. 3d 622, 626 (S.D.N.Y. 2016), or "extraordinary circumstance[]," *E. Gluck Corp.*, 252 F.R.D. at 178, so as to warrant sanctions. Now-Casting asserts that its activities do not infringe EA's rights under applicable

trademark law because Now-Casting is a prior user; EA asserts the opposite. Despite Now-Casting's uncontested evidence of its use of the Disputed Terms in the United States in 2011, not all use of a potential trademark constitutes the type of use that makes one a prior user. *See Windows User, Inc. v. Reed Bus. Publ'g Ltd.*, 795 F. Supp. 103, 108 (S.D.N.Y. 1992) ("The talismanic test is whether or not the mark was used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." (citations and internal quotation marks omitted)). It is therefore not "patently clear" that EA's counterclaims would have failed. *Weinraub*, 399 F. Supp. 2d at 460 (citation and internal quotation marks omitted). Sanctions against EA under such circumstances would unduly "chill vigorous advocacy." *Id.* (citation and internal quotation marks omitted); *see Pannonia Farms, Inc. v. USA Cable*, 426 F.3d 650, 652 (2d Cir. 2005) (explaining that district courts must be "careful not to rein in zealous advocacy").

Additionally, the Court denies Now-Casting's request for sanctions because the fees and costs that Now-Casting incurred in defending against EA's counterclaims were neither duplicative nor wasteful. Now-Casting's claims and EA's counterclaims largely deal with identical issues: (1) whether EA owns valid trademark rights to the Disputed Terms and (2) whether Now-Casting's use of the Disputed Terms infringed EA's rights. Now-Casting's briefing in support of its motion for summary judgment naturally and substantially overlaps with its briefing in opposition to EA's cross-motion. Thus, there is no practicable way for the Court to calculate Now-Casting's "reasonable attorneys' fees and costs" incurred from defending against EA's counterclaims, as distinct from those incurred from prosecuting its own claims. *Cf. Gambello v. Time Warner Commc'ns, Inc.*, 186 F. Supp. 2d 209, 230 (E.D.N.Y. 2002) ("Although attorneys' fees to the movant are authorized, here the purposes of Rule 11 would not be well-served by such an award

28

because of the complications of determining the incremental expense caused to defendant by the particular conduct found sanctionable.").

Further, an important purpose of Rule 11 is to "speed[] up and reduc[e] the costs of the litigation process." *Paganucci v. City of New York*, 993 F.2d 310, 312 (2d Cir. 1993) (citation and internal quotation marks omitted). Indeed, as noted above, the 1993 Advisory Committee Note to Rule 11 identifies as a possible consideration for deciding whether to impose sanctions "what effect [the improper conduct] had on the litigation process in time or expense." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment. Here, EA's counterclaims have had minimal effects on the litigation process and parties' litigation costs. As noted, they largely concern the same issues implicated by the claims brought by Now-Casting to commence this litigation. The Court herein has found that Now-Casting prevails on summary judgment, and there is no reason to further and unnecessarily prolong this litigation. For all these reasons, Now-Casting's Rule 11 motion is denied.

Similarly, the Court finds that, in its discretion, EA is not entitled to recover its fees in opposing Now-Casting's Rule 11 Motion. The Court disagrees with EA's characterization of Now-Casting's motion as an effort merely to "recapitulate its summary judgment motion." Rule 11 Opp. at 16. Rather, Now-Casting's references to its previous arguments merely serve to support its contention that EA's counterclaims were substantively meritless, as it must in a motion seeking sanctions. And while the Court denies Now-Casting's Rule 11 Motion, it does not find that motion to be frivolous or wholly without merit. As EA does not present any other argument as to why

Now-Casting's motion is deserving of sanctions, EA's request for fees under Rule 11(c) is also denied.

## IV. Conclusion

For the foregoing reasons, the Court grants Now-Casting's motion for summary judgment as to its own remaining claim and EA's remaining counterclaims, and denies EA's motion for summary judgment as to Now-Casting's remaining claim. Now-Casting's and EA's requests for sanctions are both denied.

The Clerk of the Court is respectfully directed to close the motions pending at Docket Numbers 134, 136, and 203, to close this case, and to enter judgment.

SO ORDERED.

Dated: September 15, 2022
New York, New York

JOHN P. CRONAN
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                        :

NOW-CASTING ECONOMICS, LTD.,            :
                                          :

                        Plaintiff,          :                 18 Civ. 2442 (JPC)
                                          :

           -v-                        :                   <u>ORDER</u>
                                          :

ECONOMIC ALCHEMY LLC,                :
                                          :

                      Defendant.       :
                                          :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

       In this trademark dispute, Defendant Economic Alchemy LLC ("EA") moves this Court to

reconsider its September 15, 2022 summary judgment decision in favor of Plaintiff Now-Casting

Economics, Ltd. ("Now-Casting"). Because EA has not pointed to controlling decisions or

materials that the Court overlooked that may have changed the Court's decision, and instead relies

on a new argument that it could have raised previously but failed to, the motion is denied.

## I. Background

       On September 15, 2022, the Court issued an Opinion and Order, which granted Now-

Casting's motion for summary judgment as to its remaining claim and EA's remaining counter-

claims, and denied EA's motion for summary judgment as to Now-Casting's claim. *Now-Casting*

*Econ., Ltd. v. Econ. Alchemy LLC*, No. 18 Civ. 2442 (JPC), 2022 WL 4280403 (S.D.N.Y. Sept.

15, 2022). In reaching that outcome, the Court held that no evidence suggested that EA's formerly

registered, but now unregistered, trademarks were distinctive and therefore protectible. *Id.* at *1.

The Court assumes familiarity with that Opinion and Order.

After the Court granted EA an extension of time to move to reconsider the September 15, 2022 Opinion and Order, Dkt. 215, EA filed a motion for reconsideration on October 6, 2022. Dkts. 216, 217 ("Motion"). EA then filed an "errata" addressing an error in its motion the following day. Dkt. 218 ("Errata"). Now-Casting opposed the motion on October 21, 2022. Dkt. 223. EA then filed a reply on October 31, 2022. Dkt. 226.

## II. Standard of Review

EA's motion is nominally one under Federal Rule of Civil Procedure 54(b) and Local Civil Rule 6.3. Dkt. 216 at 1 ("[EA moves] for an Order pursuant to Rule 54(b) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3 . . . for reconsideration of the Court's order dated September 15, 2022 . . . ."). But Rule 54(b) allows for district courts to revise an order "at any time before the entry of a judgment adjudicating all the claims and the parties' rights and liabilities." Fed. R. Civ. P. 54(b). EA's motion was made after the entry of judgment on September 15, 2022, Dkt. 213, and so Rule 54(b) is not the correct vehicle for EA to seek reconsideration. Instead, because the motion was properly made under Local Civil Rule 6.3, the Court construes EA's motion as one under Federal Rule of Civil Procedure 59(e), which allows a party to move to alter or amend a judgment within twenty-eight days of entry of the judgment. Fed. R. Civ. P. 59(e). Local Civil Rule 6.3 similarly allows for a motion for reconsideration, though within fourteen days of the entry of judgment. Local Civil Rule 6.3 further instructs that, in seeking reconsideration of a court order denying a motion, the moving party must "set[] forth concisely the matters or controlling decisions which counsel believes the Court has overlooked." "The standards governing motions under Local Rule 6.3 along with Fed. R. Civ. P. 59 are the same, and a court may grant reconsideration where the party moving for reconsideration demonstrates an 'intervening change in controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice.'" *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012) (quoting *Henderson v. Metro. Bank & Tr. Co.*, 502 F. Supp. 2d 372, 376 (S.D.N.Y. 2007)).

"A motion for reconsideration is an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Iowa Pub. Emps.' Ret. Sys. v. Deloitte & Touche LLP*, 973 F. Supp. 2d 459, 462 (S.D.N.Y. 2013) (internal quotation marks omitted), *aff'd*, 558 F. App'x 138 (2d Cir. 2014). "The standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

### III. Discussion

EA presents three arguments for why the Court should reconsider its previous decision. First, EA argues that the Court improperly disregarded the entirety of its Local Civil Rule 56.1 statement of undisputed material facts, including admissions by Now-Casting in its Complaint. Motion at 1-2. Second, EA argues that the Court overlooked evidence of its prior use of the trademarks, which undermine the Court's conclusions. *Id.* at 3-5. Third, EA argues that the Court should not have granted summary judgment in favor of Now-Casting because material questions as to distinctiveness existed. *Id.* at 5-8.

Starting with EA's first argument that the Court failed to consider evidence presented by its Local Civil Rule 56.1 statement, EA points to the Court's statement that "[a]s for EA's Rule 56.1 statement, EA once again has not complied with the Local Rule because it cited no admissible evidence. Thus, unless Now-Casting has admitted the facts in question, the Court will not consider

3

any facts raised only in EA's Rule 56.1 statement." *Id.* at 1 (citation omitted) (quoting, with omitted emphasis, *Now-Casting Econ.*, 2022 WL 4280403, at *1 n.1). EA argues that it did present evidence in the form of citations to Now-Casting's Complaint, which it frames as factual admissions by Now-Casting. Motion at 1-2. But the Court acknowledged such admissions when it stated that "*unless Now-Casting has admitted* the facts in question, the Court will not consider any facts raised only in EA's Rule 56.1 statement." *Now-Casting Econ.*, 2022 WL 4280403, at *1 n.1 (emphasis added). The Court did not, as EA contends, "disregard[] each and every statement in EA's initial Rule 56.1 statement." Motion at 2. Rather, the Court did consider all facts admitted by Now-Casting, including the allegations in its Complaint, but did not consider anything other than those admitted facts in terms of the content of EA's Rule 56.1 statement when determining whether EA demonstrated a dispute of material fact to defeat summary judgment. And more importantly, EA points to nothing in its Rule 56.1 statement that would have altered the Court's ultimate conclusions, instead highlighting only its quarrel with the Court's summary of background facts. *See* Motion at 2.

Next, EA argues that the Court incorrectly stated that EA "has not cited, let alone produced, any evidence of communications in late 2011" demonstrating that EA solicited customers, which therefore may have shown that EA engaged in prior use of the disputed trademarks. Motion at 3 (quoting *Now-Casting Econ.*, 2022 WL 4280403, at *3). EA argues that it did produce such material in discovery, pointing to a 2011 email that was attached to a sealing request and references to pre-August 29, 2012 emails in a declaration from Giselle Guzman, EA's founder. Motion at 3-

4.[1]  EA also claims that the Court "failed to notice that the domain name registration receipt submitted by plaintiff in its sur-reply was actually purchased by" a different entity.  *Id.* at 4-5.

This argument fails for two reasons.  First, regardless of whether EA produced any material to Now-Casting in discovery, what matters is whether EA cited or produced that material *to the Court* in its summary judgment briefing.  The Court is not expected to dig through all discovery material, or through all unrelated filings made by the parties, to resolve a motion for summary judgment, hence the need for parties to file thorough Rule 56.1 statements if there is evidentiary material that the party would like the Court to consider, which EA failed to do here.  More importantly, however, the information cited by EA would not have changed the outcome of the Court's September 15, 2022 Opinion and Order, as the Court's final analysis did not entail a finding as to prior use.

Finally, EA argues that the Court improperly determined that EA failed to show the existence of a material question of fact as to the distinctiveness of the marks.  Motion at 5-8.  At summary judgment, EA argued that "Plaintiff cannot show that Defendant's marks are generic or merely descriptive" for two reasons:  first, because the law of the case doctrine required the Court to abide by an earlier ruling which determined that the marks, then properly registered, were entitled to a presumption of validity (and therefore distinctiveness), and second, because regardless of that prior ruling, the marks should be entitled to the presumption of validity even after the

---

[1] In its lead brief seeking reconsideration, EA also pointed to entries in its production log, Motion at 5, but the next day EA advised the Court in the Errata that it had mischaracterized that log, Errata at 1 ("Defendant Economic Alchemy LLC respectfully submits this errata to its Memorandum in Support of its Motion for Reargument or Reconsideration . . . in order to correct an inadvertent error.  At page 5, the [Motion] stated that, 'This is demonstrably incorrect.  Exh. S3 clearly shows multiple entries marked as being responsive to Request No. 8.  Specifically, page 40 of Exh. S3 shows that EA produced at least six documents identified as being responsive to Request No. 8,' followed by a list of documents.  This was an error; the items from the production log were responsive to Interrogatory 8, not Request for Production 8 . . . .").

cancellation of their registration.  Dkts. 135 at 10-12, 192 at 9-14.  The Court determined that the law of the case doctrine did not bind it to follow the previous decision now that the marks were no longer validly registered, and further determined that the marks were no longer entitled to the presumption of validity that accompanies registration.  *Now-Casting Econ.*, 2022 WL 4280403, at *10.  Having dealt with EA's arguments, the Court determined that there was no genuine issue of material fact as to the issue of distinctiveness or protectability of the marks.  *Id.* at *11.

EA's current argument in its motion for reconsideration is different.  EA now argues that the "only relevant question," which the Court did not consider, is "whether the lack of a presumption of validity is equivalent to a lack of proof of validity sufficient to raise a material fact on a summary judgment motion in an action for a declaration of non-infringement."  Motion at 7 (emphasis removed).  Or, put differently: regardless of whether a cancelled trademark registration still entitles the corresponding marks to a presumption of validity, is the existence of that cancelled registration sufficient evidence, on its own, to survive summary judgment as to the issue of validity?  Of course, the Court did not address this question previously because EA did not raise it.  Regardless of the answer, a motion for reconsideration is not the time to present this new argument.  *See Liberty Media Corp. v. Vivendi Universal, S.A.*, 861 F. Supp. 2d 262, 265 (S.D.N.Y. 2012) ("A motion for reconsideration is not an opportunity for making new arguments that could have been previously advanced . . . ." (internal quotation marks omitted)); *Bao Guo Zhang v. Shun Lee Palace Rest., Inc.*, No. 17 Civ. 840 (VSB), 2021 WL 634717, at *3 (S.D.N.Y. Feb. 16, 2021) ("Nor is a motion for reconsideration a time to 'advance new facts, issues or arguments not previously presented to the Court.'" (quoting *Polsby v. St. Martin's Press, Inc.*, No. 97 Civ. 690 (MBM), 2000 WL 98057, at *1 (S.D.N.Y. Jan 18, 2000))).

EA disagrees, insisting that this argument "was developed at considerable length in defendant's moving brief, and was premised on the substantive legal principle that *the presumption of validity of a registered trademark is not retroactively nullified* merely because the registration administratively lapsed, absent evidence of a change of in circumstances." Motion at 7 (emphasis added). But this framing exposes the problem. EA's previous argument concerned the presumption of validity, which the Court determined did not apply. Its new argument concerns the sufficiency of evidence absent that presumption, an issue that EA did not previously raise.[2]

Even had EA made the argument that it now advances, it does not cite to any "controlling authority" that demonstrates that the Court's previous determination was incorrect. It cites instead to a Northern District of Texas case, *Waples-Platter Companies v. General Foods Corp.*, 439 F. Supp. 551 (N.D. Tex. 1977); a Southern District of New York case, *Rodgers v. Wright*, 544 F. Supp. 2d 302 (S.D.N.Y. 2008), which the Court addressed in its prior opinion, *Now-Casting Econ.*, 2022 WL 4280403, at *10 n.10; and a sentence of *dicta* from a footnote in *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 529 n.6 (S.D.N.Y. 2012), which appeared nowhere in EA's original briefing. *See* Motion at 6-8. None of those citations constitute

---

[2] To the extent that EA points as well to its statement, made in its summary judgment briefing, that "plaintiff has failed to establish that defendant—who held registrations for the marks in question less than a year ago, and when this lawsuit was filed—cannot possibly prove facts at trial establishing the existence of secondary meaning," Motion at 7 (quoting Dkt. 192 (summary judgment opposition brief) at 15)), this statement was made following the argument that Now-Casting had failed to prove that EA's marks were not distinctive because of the law of the case doctrine and the presumption of validity. It was not some new argument regarding the evidentiary weight of the cancelled registration, but instead an articulation of EA's position that Now-Casting had failed to rebut the presumption of validity that EA claimed applied to the cancelled trademarks. There is again no indication that EA intended to make the separate argument that its cancelled trademark registrations, despite no longer entitling its trademarks to a presumption of validity, still served as evidence of distinctiveness.

"controlling authority," and thus they are insufficient material for the Court to reconsider its prior determination.

In sum, EA simply disagrees with the Court's determinations in the September 15, 2022 Opinion and Order, but fails to identify controlling decisions or materials that the Court overlooked that might reasonably be expected to alter that Opinion and Order. A motion for reconsideration is the improper forum to present such disagreement.

### IV. Conclusion

For the above reasons, the Court denies EA's motion for reconsideration. The Clerk of the Court is respectfully directed to close the motion pending at Docket Number 216.

SO ORDERED.

Dated: May 30, 2023
New York, New York

_____
JOHN P. CRONAN
United States District Judge