# 23-947

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

◆▬◆

NOW-CASTING ECONOMICS, LTD.,

*Plaintiff-Counter-Defendant-Appellee,*

—against—

ECONOMIC ALCHEMY LLC,

*Defendant-Counter-Claimant-Third-Party Plaintiff-Third-Party
Defendant-Counter-Claimant-Third-Party Plaintiff-Appellant,*

—against—

FEDERAL RESERVE BANK OF NEW YORK,

*Third-Party Plaintiff-Third-Party Defendant-Appellee,*

(*Caption continued on inside cover*)

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

## BRIEF FOR PLAINTIFF-COUNTER-DEFENDANT-APPELLEE
## NOW-CASTING ECONOMICS, LTD.

---

BRIAN A. KATZ
KATHERINE E. MATEO
OLSHAN FROME WOLOSKY LLP
1325 Avenue of the Americas,
  15th Floor
New York, New York 10019
(212) 451-2300

*Attorneys for Plaintiff-Counter-
  Defendant-Appellee
  Now-Casting Economics, LTD.*

Federal Reserve Board of Governors,

*Third-Party Defendant-Appellees,*

Federal Reserve Bank of San Francisco, Federal Reserve Bank of Chicago, Federal Reserve Board of Governors, Federal Reserve Bank of Philadelphia, Federal Reserve Bank of Boston, Federal Reserve Bank of Atlanta, Federal Reserve Bank of Minneapolis, Federal Reserve Bank of Dallas, Federal Reserve Bank of Richmond, Federal Reserve Bank of Kansas City, Federal Reserve Bank of Cleveland, Federal Reserve Bank of St. Louis,

*Third-Party Defendants.*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, the undersigned counsel for Plaintiff-Appellee certifies that Now-Casting Economics, Ltd. has no parent corporation and that no publicly held corporation owns ten percent or more of Now-Casting Economics, Ltd.'s corporate stock.

# Table of Contents

Page

CORPORATE DISCLOSURE STATEMENT ..........................................................1

SUMMARY OF THE ARGUMENT ........................................................1

COUNTERSTATEMENT OF THE CASE.................................................6

      A.    Now-Casting's Prior Use of the Disputed Terms ......................6

      B.    EA's Own Generic Use of the Disputed Terms.........................8

STANDARD OF REVIEW ....................................................................11

  I     ARGUMENT .........................................................................13

      A.    The District Court Did Not Err in Permitting Now-Casting to Pursue Two Different Arguments to EA's Claims (Not "Contradictory Theories of Recovery") in Summary Judgment ...............................................................13

      B.    The District Court did not Disregard Facts Alleged by Now-Casting in the Complaint Cited in EA's Rule 56.1 Statement.................................................................................17

      C.    The District Court Did Not Err in Holding That There Was no Genuine Issue of Disputed Fact on the Question of Whether EA's Nowcast and Now-Cast Marks are Generic or Merely Descriptive.................................................23

      D.    The District Court Properly Found That EA Failed to Meet its Burden on Summary Judgment to Show the Existence of a Serious Fact Question as to the Distinctiveness of its NOWCAST and NOW-CAST Marks.......................................................................................25

      E.    The District Court Did Not Overlook Any Material Evidence of Disputed Facts in the Summary Judgment Record in Making its Findings of Fact ......................................32

F.    Now-Casting is Entitled to Summary Judgment on the Merits Because it Sufficiently Demonstrates That the Disputed Terms Are Generic, or at a Minimum, Merely Descriptive Without Secondary Meaning, and That Now-Casting is the Senior User ........................................................35

CONCLUSION .......................................................................................39

# Table of Authorities

Page

CASES

Advance Magazine Publishers, Inc. v. Norris,
   627 F. Supp. 2d 103 (S.D.N.Y 2008) ......................................................25, 26, 27

Banff, Ltd. v. Federated Dep't Stores, Inc.,
   841 F.2d 486 (2d Cir. 1988) .......................................................................21, 36

Bourdon v. Loughren,
   386 F.3d 88 (2d Cir. 2004) ...............................................................................11

Celotex Corp. v. Catrett,
   477 U.S. 317 ....................................................................................................12

Chance v. Pac-Tel Teletrac Inc.,
   242 F.3d 1151 (9th Cir. 2001) .........................................................................16

Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.,
   201 F. Supp. 3d 428 (S.D.N.Y. 2016) ..............................................................14

Courtenay Commc'ns Corp. v. Hall,
   334 F.3d 210 (2d Cir. 2003) .............................................................................21

D'Amico v. City of New York,
   132 F.3d 145 (2d Cir. 1998) .............................................................................12

DC Labs Inc. v. Celebrity Signatures Int'l, Inc.,
   No. 12-CV-01454, 2013 WL 4026366 ............................................................13

De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.,
   440 F. Supp. 2d 249 (S.D.N.Y. 2006) ..............................................................15

Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.,
   No. 01-CIV-2950, 2005 WL 2148925 (S.D.N.Y. Sept. 6, 2005),
   aff'd sub nom. Diarama Trading Co. v. Thompson, 194 F. App'x
   81 (2d Cir. 2006)...............................................................................................16

Door Sys., Inc. v. Pro–Line Door Sys.,
   83 F.3d 169 (7th Cir.1996) ...............................................................................27

Table of Authorities
(continued)

*Estate of Landers v. Leavitt*,
545 F.3d 98 (2d Cir. 2008) ................................................................12

*Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*,
897 F.3d 413 (2d Cir. 2018) ..............................................................37

*Fusco Group, Inc v. Loss Consultants International, Inc.*,
462 F. Supp. 2d 321 (N.D.N.Y. 2006). (Mot. .) .........................................27, 29

*Genesee Brewing Co. v. Stroh Brewing Co.*,
124 F.3d 137 (2d Cir. 1997) ..........................................................21, 36

*GMT Prods., L.P. v. Cablevision of New York City, Inc.*,
816 F. Supp. 207 (S.D.N.Y. 1993) ................................................15, 21, 36

*Goenaga v. March of Dimes Defects Found.*,
51 F.3d 14 (2d Cir. 1995) ................................................................12

*Grain Traders, Inc. v. Citibank, N.A.*,
160 F.3d 97 (2d Cir. 1998) ................................................................11

*Havey v. Homebound Mortgage, Inc.*,
547 F.3d 158 (2d Cir. 2008) ..............................................................11

*Hellstrom v. United States Department of Veterans Affairs*,
201 F.3d 94 (2nd Cir. 2000) ..............................................................11

*Hoyt v. Andreucci*,
433 F.3d 320 (2d Cir. 2006) ..............................................................11

*Jaramillo v. Weyerhaeuser Co.*,
536 F.3d 140 (2d Cir. 2008) ..............................................................12

*Knight v. United States Fire Ins. Co.*,
804 F.2d 9 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987) .........................11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
408 F.3d 596 (9th Cir. 2005) ..............................................................13

*La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*,
495 F.2d 1265 (2d Cir. 1974) ...................................................................16

*Lexington Mgmt. Corp. v. Lexington Capital Partners*,
10 F.Supp.2d 271 (S.D.N.Y. 1998) .........................................................32

*Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of
Contemp. Dance, Inc.*,
153 F. Supp. 2d 512 (S.D.N.Y. 2001), *aff'd*, 43 F. App'x 408 (2d
Cir. 2002) .................................................................................................38

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ............................................................................11, 12

*McPherson v. N.Y. City Dep't of Educ.*,
457 F.3d 211 (2d Cir. 2006) ....................................................................12

*Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*,
571 U.S. 191 (2014) .............................................................................4, 24

*Noval Williams Films LLC v. Branca*,
No. 14 Civ. 4711 (PAC), 2018 WL 389092 (S.D.N.Y. Jan. 11,
2018) ........................................................................................................14

*Park `N Fly, Inc. v. Dollar Park & Fly, Inc.*,
469 U.S. 189 (1985) ..................................................................................21

*Patsy's Italian Rest., Inc. v. Banas*,
658 F.3d 254 (2d Cir. 2011) ....................................................................16

*Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*,
887 F. Supp. 2d 519 (S.D.N.Y. 2012) .....................................................31

*Philip Morris USA Inc. v. Felizardo*,
No. 03 Civ. 5891, 2004 WL 1375277 (S.D.N.Y. June 18, 2004) ...........11

*Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*,
  894 F. Supp. 2d 288 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012) ...............37

*Rodgers v. Wright*,
  544 F. Supp. 2d 302 (S.D.N.Y. 2008) ..........................................................27, 28

*Threeline Imports, Inc. v. Vernikov*,
  239 F. Supp. 3d 542 (E.D.N.Y. 2017) .................................................................16

*Virgin Enters., Ltd. v. Nawab*,
  335 F.3d 141 (2d Cir. 2003) ................................................................................15

*W.R. Grace & Co. v. Union Carbide Corp.*,
  581 F. Supp. 148 (S.D.N.Y. 1983) ......................................................................26

*Waples-Platter Companies v. Gen. Foods Corp.*,
  439 F. Supp. 551 (N.D. Tex. 1977) .....................................................................31

*Woodman v. WWOR-TV, Inc.*,
  411 F.3d 69 (2d Cir. 2005) ..................................................................................12

## STATUTES

15 U.S.C. § 1052 .....................................................................................................31

15 U.S.C. § 1057 .....................................................................................................31

15 U.S.C. § 1058 .....................................................................................................27

15 U.S.C. § 1125 .....................................................................................................15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ............................................................................................passim

Federal Rules of Civil Procedure Rule 8 ...........................................................3, 15

Local Civil Rule 56.1 ........................................................................................18, 36

Plaintiff-Appellee Now-Casting Economics, Ltd. ("Now-Casting") respectfully submits this brief in opposition to the October 16, 2023 appeal filed by Defendant-Appellant Economic Alchemy LLC ("EA") appealing the Opinion and Order, dated September 15, 2022, issued by the Honorable John P. Cronan, United States District Judge in the District Court of the Southern District of New York, granting Now-Casting's motion for summary judgment, (A-28), the "Order").

## SUMMARY OF THE ARGUMENT

This appeal seeks to overturn a thoughtful District Court decision awarding summary judgment to Now-Casting following a careful review of the cross-motions for summary judgment and the voluminous evidentiary submissions. The case involves Now-Casting's use of the business name Now-Casting Economics Ltd., as well as its logo, which incorporates the word Now-Casting. EA claimed to own unregistered trademark rights in the words NOWCAST and NOW-CAST (the "Disputed Terms") for various economic services and has alleged that Now-Casting, by using its name and the Disputed Terms, is infringing those alleged rights.

Though it bore the burden, EA failed to establish that it owned any valid trademark rights in the Disputed Terms for two reasons. First, the evidence confirmed that Now-Casting began using its name and the Disputed Terms *before* EA. Pursuant to well-settled law, a senior user of a mark cannot be an infringer of a mark to a junior user. Tellingly, EA did not dispute Now-Casting's evidence of prior

use in its Rule 56.1 statement and presented no evidence that EA was the senior user of the Disputed Terms.

Second, EA could not demonstrate that the Disputed Terms were capable of acquiring trademark protection because the pervasive generic use of the Disputed Terms by the relevant industry (including generic use by EA and its founder) confirmed they are generic words as applied to EA's services. EA also failed to present any evidence to the contrary and failed to dispute Now-Casting's Rule 56.1 statement asserting that the Disputed Terms were generic and not capable of trademark protection. In that same vein, EA could not satisfy its burden because even if the Disputed Terms were not generic, at a minimum, they were merely descriptive and had not acquired secondary meaning. EA conceded all relevant facts for these findings, as detailed in Now-Casting's Rule 56.1 statement, by not challenging them in its own Rule 56.1 counterstatement. EA also failed to present any of its own evidence that the Disputed Terms were valid trademarks owned by EA. On these bases the District Court correctly awarded Now-Casting summary judgment.

After unsuccessfully petitioning the District Court to reconsider its ruling on the cross motions for summary judgement, EA now improperly asks the Court to overturn the Order based on its plain dissatisfaction with the District Court's interpretation of the applicable law and facts. EA's arguments are meritless.

12276173-8

EA argues that the District Court erred for five reasons.[1] All five fail. *First*, EA argues that the District Court erred in allowing Now-Casting to pursue two different defenses: (a) that the term NOWCAST was not a valid trademark as it was generic or primarily descriptive and (b) even if the Court concluded that the term NOWCAST was a valid trademark, EA did not own any rights to it because Now-Casting was the senior user of the Disputed Terms. EA incorrectly styles these arguments as "contradictory theories of recovery," even though there is no contradiction and neither was the basis for a "recovery." The District Court correctly rejected this argument, reasoning that Now-Casting's assertions about the senior use and the genericness of the Disputed Terms are attacks on *EA's* infringement claim rather than "theories of recovery." And, those defenses were properly asserted together, as Rule 8(d)(3) of the Federal Rules of Civil Procedure makes clear that a party may plead "as many separate … defenses as it has, regardless of consistency."

*Second*, EA claims that the District Court disregarded material facts alleged by Now-Casting in the Complaint contained in EA's Rule 56.1 statement. Not true. EA failed to cite any evidence in support of its motion for summary judgment – pointing only to allegations in the Complaint as "admissions." The Order was clear that the District Court considered all statements contained in the parties' Rule 56.1

---

[1] EA also makes two appeal arguments regarding the dismissal of Defendant The Federal Reserve Bank of New York. Because those arguments do not pertain to Now-Casting, Now-Casting will not address those two appeal arguments herein.

statements and counterstatements. To the extent EA had any doubt, in denying EA's Motion for Reconsideration, the District Court further confirmed that it "did consider all facts admitted by Now-Casting, including the allegations in its Complaint, but did not consider anything other than those admitted facts in terms of the content of EA's Rule 56.1 statement when determining whether EA demonstrated a dispute of material fact to defeat summary judgment." (SPA-58.) Tellingly, the District Court noted that "EA point[ed] to *nothing* in its Rule 56.1 statement that would have altered the Court's ultimate conclusions, instead highlighting only its quarrel with the Court's summary of background facts." (*Id.* (emphasis added).)

*Third*, EA argues that the District Court erred in holding that there was no genuine issue of disputed fact on the question of whether EA's NOWCAST and NOW-CAST marks are generic or merely descriptive because it incorrectly placed the burden of proving the underlying substantive claim of infringement on EA. EA is wrong. As explained below, the Supreme Court has providently held that in a declaratory judgment action "the burden to prove infringement *never* shifts [to the alleged infringer] if the charge is denied in the plea or answer," as here. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 198-99 (2014) (internal quotation marks omitted). As such, the District Court properly placed the burden of proving that Now-Casting infringed the Disputed Terms on EA as the declaratory

judgment defendant. As is clear from its appeal, EA's petulance stems from its own inability to meet that burden not any error by the District Court.

*Fourth*, despite not disputing Now-Casting's Rule 56.1 statement with its own Rule 56.1 counterstatement or presenting evidence on the issue, EA states it met its burden on summary judgment to show the existence of a serious fact question as to the distinctiveness of its NOWCAST and NOW-CAST marks solely on the basis that it was entitled to a presumption of validity and distinctiveness because it *previously* had trademark registrations – registrations that were subsequently cancelled by the trademark office.[2] The law is clear that any presumption of validity and distinctiveness afforded to registered trademarks does not apply to cancelled registrations, such as EA's. And, to the extent any presumption would have applied, it is a rebuttable, not conclusive, presumption. Here, even if there was such a presumption, Now-Casting has clearly rebutted the presumption by submitting more than 350 examples of generic uses of the Disputed Terms throughout the economic industry, including generic uses by EA and its own founder.

*Fifth*, EA argues that the court overlooked material evidence of disputed facts in the summary judgment record in making its findings of fact by "disregarding"

---

[2] It is important to note that the cancelled trademark registrations were improperly obtained in the first instance because EA failed to disclose to the trademark office that the Disputed Terms had meaning in the relevant industry and that even EA and its founder had used the Disputed Terms generically. If the trademark office knew that the Disputed Terms are generic terms in the economic industry, EA would not have been able to obtain the now-cancelled trademark registrations and, therefore, would not be entitled to any such presumption.

EA's self-serving declaration that it was the prior user, which was unsupported by any competent evidence. But, as the District Court further confirmed in denying EA's Motion for Reconsideration, it properly considered EA's self-serving declaration and rejected its arguments after reviewing the evidence submitted, including the documentary evidence showing Now-Casting's prior use of the Disputed Terms and the parties' Rule 56.1 statements and counterstatements in which EA did *not* dispute that Now-Casting had prior use of the Disputed Terms. Indeed, EA even concedes that summary judgment is appropriately denied to a party relying exclusively on his own testimony where the testimony is "contradictory or rife with inconsistencies such that it was facially implausible," as is the case here. (Mot. at 24.)

For the foregoing reasons, nothing in EA's appeal warrants overturning the District Court's comprehensive Order and, therefore, Now-Casting respectfully requests that the Order be affirmed in its entirety.

## COUNTERSTATEMENT OF THE CASE

### A.    Now-Casting's Prior Use of the Disputed Terms

Central to this case is the word "nowcast." A nowcast is broadly defined as a prediction of the present. It first became popularized in meteorology, and beginning in the late 1990s-early 2000s, economists began to use the term to identify a prediction of a present economic condition. Now-Casting, a specialist economic

prediction and forecasting business, was founded in 2010 by two pioneers in the field of economic nowcasting, Domenico Giannone and Lucrezia Reichlin (the "Founders"). (*See* A-35 ¶¶ 8-9.) Although, by then, the term nowcast was already in use among economists, (*see, e.g.*, A-40 – A-46 ¶¶ 21–26), the Founders' first published use of the terms nowcast and now-cast (and derivations thereof) to identify and describe a method of providing predictions or estimates of present or near-future economic conditions came as early as 2005, when the Founders (together with David Small) wrote an article entitled "Nowcasting: The Real-Time Informational Content of Macroeconomic Data." (A-35 – A-36 ¶ 11, Ex. 1.) Thereafter, the Founders, as well as many other economists (including EA's own founder), continued to conduct research and author articles using the terms nowcast and now-cast in a generic manner. The Founders published at least seven additional articles from 2005 through to 2011. (A-36 ¶ 12, Exs. 2-8.) All of these publications were and continue to be widely available throughout the world, including in the United States. (A-37 ¶ 14.) The Founders also spoke on the topic of nowcasting during economic conferences and seminars around the world, including in the United States. (*Id.*)

Now-Casting first began using its company name in the U.K. as early as 2010, and it began actively marketing its nowcasting services, using Now-Casting's name and the Disputed Terms, to potential customers in the U.S. at least as early as February 2011. (A-372 ¶ 9; Ex. B003; A-367 ¶¶ 24-25.) Today, Now-Casting

continues to maintain a presence and engage in continual commercial activity in the U.S. To that end, Now-Casting has a website available to U.S. customers, Now-Casting personnel have traveled to the U.S. on several occasions to meet with U.S. customers, Now-Casting has contracts with U.S. customers, and Now-Casting continues to market itself to the U.S. market as it has since February 2011. (A-35 ¶ 9; A-372 – A-378 ¶¶ 10-14.)

B.    EA's Own Generic Use of the Disputed Terms.

EA claims to be in the business of, among other things, offering economic forecasts and predictions. (A-38 ¶ 15). On October 25, 2012, in support of a trademark application to register the mark ECONOMIC ALCHEMY, EA submitted a page from its website wherein it identifies the services it provides, including "nowcasting and forecasting," in which the term nowcasting is used in lowercase letters in a generic manner. (A-395 ¶ 48; SA-10.[3]) Even an early version of EA's

---

[3] EA failed to append with its appeal Appendix *any* of the more than 350 examples showing generic and/or descriptive use of the Disputed Terms that Now-Casting filed with its Motion for Summary Judgment in the District Court. Although required to, EA also did not provide Now-Casting an advance copy of its proposed Appendix or give notice that it excluded such exhibits from its Appendix until it was ready to file its appeal, leaving no time to confer regarding additional inclusions to the Appendix. For this reason, Now-Casting includes a Supplemental Appendix providing the Court sample excerpts from some of these exhibits showing generic and/or descriptive use of the Disputed Terms that Now-Casting filed with its Motion for Summary Judgment in the District Court. References to Now-Casting's Supplemental Appendix are cited as "SA." Furthermore, EA failed to include exhibits to declarations and other filings included in its Appendix. To the extent available, Now-Casting cites to the relevant declarations or filings in EA's Appendix or Special Appendix, or Now-Casting's Supplemental Appendix, and notes the underlying exhibit details. Now-Casting reserves the right to supplement those exhibits if the Court requests additional examples of generic use of the Disputed Terms.

website describes EA as a "Boutique Research and Consulting Firm specializing in: … econometric models, *nowcasting* and forecasting." (A-380 ¶ 4 (emphasis added); SA-10.)

Beginning around 2008, EA's founder, Dr. Giselle Guzman, wrote academic papers that used the term nowcast in a generic manner. (A-392 – A-393 ¶ 44; *see e.g.*, SA-1 – SA-4.) In some of her papers, Dr. Guzman even referenced one of the Founders' papers that also used the term "nowcast" generically, entitled *Nowcasting: The real-time informational content of macroeconomic data*. (A-392 – A-395 ¶¶ 44-46; SA-9.)

Thereafter, on May 28, 2013, EA obtained U.S. trademark registrations – now cancelled – for the marks NOWCAST, Registration No. 4341813 in Class 35, and NOW-CAST, Registration No. 4341811 in Class 35, alleging a first use in commerce date of January 25, 2012 (collectively, "EA's Registrations"). (A-38 – A-39 ¶¶ 16-17.) EA also has pending trademark applications for NOWCAST and NOW-CAST (which have been opposed by Now-Casting) ("EA's Applications"). (A-386 ¶ 21; Exs. W003-W005.) As part of its trademark applications, EA did not disclose to the USPTO that the Disputed Terms had any meaning within the industry, nor did EA disclose that it and its founder had previously used the Disputed Terms generically themselves. (A-386 ¶ 21.)

In EA's Registrations and Applications, EA stated that its services consist of economic predicting and forecasting. (A-386 ¶ 22; Exs. W001-W005.) In EA's Registrations and Applications, EA claims a date of first use of the Disputed Terms in commerce of January 25, 2012 and a date of first use anywhere of November 27, 2011. (A-387 ¶ 23; Exs. W001-W005.) Both of these dates are long after Now-Casting began using its company name and the Disputed Terms in commerce in the United States.

When Dr. Guzman was asked during her deposition about when EA began using the Disputed Terms for its economic prediction systems, she testified that it was in "late 2011." (*See* A-381 ¶ 7; Ex. D (Deposition of Giselle Guzman hereinafter referred to as the "Guzman Tr.") p. 43:22 – 44:5.) Although the exact date of EA's use is not clear, it was not until 2015, however, that EA announced the "launch of Now-Cast" with a press release and described it as "a fully-automated economic prediction platform that analyzes Big Data to monitor real-time events across the world and instantaneously calculate their economic impact on global and local economies on a live minute-by-minute basis." (A-382 ¶ 12; Ex. G008.)

On January 3, 2020, EA's Registrations were canceled by the USPTO due to EA's failure to file the required Declarations of Use. (A-387 ¶ 24; Exs. W001-W002.) Currently, EA has no valid U.S. trademark registrations for either of the Disputed Terms. (A-387 ¶ 24.)

This Court reviews a District Court's decision to grant summary judgment *de novo*. *Hoyt v. Andreucci*, 433 F.3d 320, 327 (2d Cir. 2006) (*quoting Bourdon v. Loughren*, 386 F.3d 88, 92 (2d Cir. 2004); *Havey v. Homebound Mortgage, Inc.*, 547 F.3d 158, 163 (2d Cir. 2008) (holding that summary judgment determinations on appeal are reviewed *de novo*). Summary judgment should be granted if after discovery the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Hellstrom v. United States Department of Veterans Affairs*, 201 F.3d 94, 97 (2nd Cir. 2000); Fed. R. Civ. P. 56(c). "However, the mere existence of disputed factual issues is insufficient to defeat a motion for summary judgment." *Philip Morris USA Inc. v. Felizardo*, No. 03 Civ. 5891, 2004 WL 1375277, at *3 (S.D.N.Y. June 18, 2004) (quoting *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11-12 (2d Cir. 1986), *cert. denied*, 480 U.S. 932 (1987)). "The disputed issues of fact must be 'material to the outcome of the litigation' (*Id.* at 11), and must be backed by evidence that would allow 'a rational trier of fact to find for the non-moving party.'" *Philip Morris USA Inc.*, 2004 WL 1375277, at *3 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)); *Grain Traders, Inc. v. Citibank, N.A.*, 160 F.3d 97, 100 (2d Cir. 1998) (explaining that in order to defeat a summary judgment motion, a nonmoving party must come forward with "*evidence* that would be

sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of [an] element at trial.") (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986)).

To this end, "[t]he non-moving party may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998); *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008); *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 n. 4 (2d Cir. 2006); *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 85 (2d Cir. 2005); *Goenaga v. March of Dimes Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). Indeed, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The district court's evidentiary rulings are reviewed for abuse of discretion. *Estate of Landers v. Leavitt*, 545 F.3d 98, 113 (2d Cir. 2008).

ARGUMENT

A.    The District Court Did Not Err in Permitting Now-Casting to Pursue
      Two Different Arguments to EA's Claims (Not "Contradictory
      Theories of Recovery") in Summary Judgment

Having failed to learn from the District Court's wisdom in rejecting EA's

arguments, EA *again* incorrectly argues that Now-Casting sought summary

judgment on two entirely inconsistent bases for "recovery:" that the Disputed Terms

are generic/descriptive and that even if the Disputed Terms are valid trademarks,

that Now-Casting (not EA) has prior use. For one, these are not inconsistent theories

of "recovery" at all. For example, one does not need to find that a trademark is valid

in order to determine whether the party claiming infringement has prior use of the

purported mark. As explained below, each argument independently defeat claims of

infringement.[4] Second, neither finding entitles Now-Casting to any "recovery," as it

is not claiming any trademark rights of its own in the Disputed Terms.

Semantics aside, EA still fails to appreciate the parties' respective burdens on

Now-Casting's declaratory judgment claim despite citing to the relevant portion and

key cases from the Order in a different part of its appeal. As the District Court

confirmed: "*EA* ultimately bears the burden of proving that Now-Casting infringed

---

[4] In addition, these two claims are often asserted together in trademark infringement actions. *See, e.g., KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 408 F.3d 596, 601 (9th Cir. 2005) *DC Labs Inc. v. Celebrity Signatures Int'l, Inc.,* No. 12-CV-01454, 2013 WL 4026366 at *8.

EA's unregistered trademarks *as the declaratory judgment defendant*." (SPA-38 (*citing Noval Williams Films LLC v. Branca*, No. 14 Civ. 4711 (PAC), 2018 WL 389092, at *3 (S.D.N.Y. Jan. 11, 2018); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 440 (S.D.N.Y. 2016) (explaining that "declaratory judgment plaintiffs do not have the burden of proving non-infringement" (*citing Medtronic Inc. v. Mirowski Fam. Ventures, LLC,* 571 U.S. 191, 198-99 (2014)); *Starter Corp. v. Converse, Inc.,* 170 F.3d 286, 291 (2d Cir. 1999)).

*Noval Williams Films LLC* is directly on point. There, the plaintiff sought a declaration that it had not infringed a copyright in a video footage or photographs of the late pop star Michael Jackson used in its film. *Noval Williams Films LLC*, 2018 WL 389092, at *1. The court clarified that "[i]n a declaratory judgment action seeking a declaration that intellectual property is not infringed, the burden of proof *remains* with the owner of the intellectual property who must establish infringement." *Id.* at *3. And, "[s]ince an element of a copyright infringement claim is copyright ownership, the declaratory judgement defendant must [also] establish the copyright ownership as a matter of law, if she is to prevail on summary judgment." *Id*. Because the defendant could not establish the copyright ownership as a matter of law, the court found in favor of plaintiff on its declaratory judgment claim. *Id.* at *4.

Like in *Noval Williams Films LLC,* for EA to have prevailed on its infringement counterclaim pursuant to 15 U.S.C. §1125(a) and to defeat Now-Casting's declaratory judgment claim of non-infringement, EA was required to show that the Disputed Terms are "protectable, and that [it] has engaged in 'prior use and ownership.'" (SPA-39 (*citing De Beers LV Trademark Ltd. v. DeBeers Diamond Syndicate, Inc.*, 440 F. Supp. 2d 249, 269 (S.D.N.Y. 2006) (quoting *Virgin Enters., Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003)).) For this reason, the District Court remarked that "Now-Casting's assertions about the genericness of the Disputed Terms and its claim to be the prior trademark user are thus better thought of as attacks on EA's infringement claim rather than, as EA characterizes them, 'theories of recovery.'" (SPA-39.) And, as Rule 8 of the Federal Rules of Civil Procedure makes clear, a party may plead "as many separate … defenses as it has, *regardless of consistency*." Fed. R. Civ. P. 8(d)(3) (emphasis added).

This District Court holding was correct because, as it stated, each defense individually was sufficient to destroy EA's claim of infringement since EA could not meet its burden of establishing a valid mark. (SPA-38 – SPA-39.) For one, a finding that a term is generic, or at a minimum, merely descriptive without secondary meaning, bars an infringement claim because it is well-settled that these kinds of terms are not entitled to trademark protection. *GMT Prods., L.P. v. Cablevision of New York City, Inc.*, 816 F. Supp. 207, 210 (S.D.N.Y. 1993). Two, prior use is

similarly fatal to a claim of infringement because the junior user of a purported trademark has no claim for trademark infringement against a party who used the trademark prior to the junior user's use. *See e.g.*, *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1271 (2d Cir. 1974); *Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01-CIV-2950, 2005 WL 2148925, at *7 (S.D.N.Y. Sept. 6, 2005), *aff'd sub nom. Diarama Trading Co. v. Thompson*, 194 F. App'x 81 (2d Cir. 2006); *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1155-1158 (9th Cir. 2001).[5]

Accordingly, the District Court did not err in permitting Now-Casting to pursue these two arguments to EA's claims (not "contradictory theories of recovery") in summary judgment. Indeed, as set forth below, 1) Now-Casting presented more than sufficient evidence to successfully establish these defenses by showing that EA did not and could not prove that it had prior use of the Disputed Terms (Now-Casting did); and 2) EA did not and could also not prove that the Disputed Terms were valid trademarks and not generic, or at a minimum merely descriptive without secondary meaning.

---

[5] Although the burden is on EA to prove prior use, for purposes of establishing priority as a defense, Now-Casting does not need to establish secondary meaning of its own use to defeat an infringement claim. Instead, Now-Casting need only show that it has used the Disputed Terms first. *See Patsy's Italian Rest., Inc. v. Banas*, 658 F.3d 254, 267 (2d Cir. 2011); *Threeline Imports, Inc. v. Vernikov*, 239 F. Supp. 3d 542, 557–58 (E.D.N.Y. 2017).

12276173-8

## B. The District Court did not Disregard Facts Alleged by Now-Casting in the Complaint Cited in EA's Rule 56.1 Statement

EA complains that the District Court disregarded its citations to the Complaint contained in its Rule 56.1 statement and counterstatement. This is blatantly false. As EA concedes, the Order specifically acknowledged consideration of the parties' counter Rule 56.1 statements and counterstatements – which EA's statements included citations to the Complaint. (App. at 11; SPA-25, SPA-26, fn 1.) Leaving no room for doubt, the District Court expressly wrote that the facts of the Order were:

> **drawn from** Now-Casting's statement of material facts under Local Civil Rule 56.1, Dkt. 137 ("Pl. 56.1 Stmt."), **EA's statement under Rule 56.1, Dkt. 135-1 ("Deft. 56.1 Stmt.")**, Now-Casting's counter-statement statement under Rule 56.1, Dkt. 191 ("Pl. Counter 56.1 Stmt."), **EA's counter-statement statement under Rule 56.1, Dkt. 194 ("Deft. Counter 56.1 Stmt."),** and the exhibits filed by the parties.

(SPA-25 at fn 1 (emphasis added).) The District Court went on to state that, for facts first raised in Now-Casting's statement of material facts, it would only cite to Now-Casting's Rule 56.1 statement because EA failed to "file 'a correspondingly numbered paragraph responding to each numbered paragraph in [Now-Casting's statement]'" and did "not offe[r] admissible evidence to refute that fact, or EA simply [added] its own 'spin' on the fact or otherwise dispute the inferences from the stated fact." (*Id*.) As additional evidence of the District Court's consideration of

EA's citations to the Complaint, the Order stated that "unless Now-Casting has admitted the facts in question, the Court will not consider any facts raised only in EA's Rule 56.1 statement." (SPA-26 at fn 1.) To the extent EA was confused whether the District Court considered its citations to allegations in the Complaint, in denying EA's Motion for Reconsideration, the District Court further confirmed that it "did consider all facts admitted by Now-Casting, including the allegations in its Complaint, but did not consider anything other than those admitted facts in terms of the content of EA's Rule 56.1 statement when determining whether EA demonstrated a dispute of material fact to defeat summary judgment." (SPA-58.)

The District Court's reasoning is consistent with Local Rule 56.1. Under the mandatory provisions of the District Court's Local Rule 56.1(c), each statement of material fact will be deemed to be admitted for purposes of the motion unless specifically controverted. *See* Loc. R. Civ. P. 56.1(c) ("*Each numbered paragraph in the statement of material facts* set forth in the statement required to be served by the moving party *will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph* in the statement required to be served by the opposing party." (emphasis added)). It is not enough that EA baldly denies a statement of material fact. Local Civil Rule 56.1(d) specifies that "each statement controverting any statement of material fact, *must be*

*followed by citation to evidence which would be admissible.*" Loc. R. Civ. P. 56.1(d) (emphasis added).

Now-Casting provided a detailed Rule 56.1 statement, outlining the material facts with substantial evidentiary citations to support those facts (A-249 – A-408). In response to Now-Casting's 159 page, 99 paragraph Rule 56.1 statement, EA provided a two page counterstatement, "disputing" only 5 of the 99 paragraphs without any supporting evidence (A-601 – A-602). Because EA failed to follow Local Rule 56.1, those matters that EA did not address properly in its own Local Rule 56.1 statement were correctly deemed admitted by the District Court. EA failed to dispute any of the dispositive facts, including: that Now-Casting had prior use of the Disputed Terms (A-254-259, ¶¶ 15-19), that the Disputed Terms were not protectable as trademarks because they are generic (or at least merely descriptive with no secondary meaning) A-274-352, ¶¶ 67-92), and that EA itself had used the Disputed Terms generically (A-270-273, ¶¶ 59-66). Indeed, EA's Rule 56.1 counterstatement failed to raise *any* genuine issue of material fact, including those facts dispositive to Now-Casting's motion for summary judgment. (A-241 – A-245.) For this reason, the District Court found that "[f]or those paragraphs in Now-Casting's Rule 56.1 statement that EA did not respond to, the Court will deem the facts admitted so long as they are supported by evidence in the record." (SPA-25 at fn. 1.) Now-Casting properly submitted a thorough Rule 56.1 statement and

counterstatement, in which it included a litany of citations to the record in support of its statements of facts and, for this reason, its uncontroverted facts, including prior use and the genericness/descriptiveness of the Disputed Terms, were appropriately deemed admitted by EA. (*See* A-249 – A-354; A-562 – A-573.)

EA's citations to the pleadings in its Local Rule 56.1 statement and counterstatement also fail to raise any issue of material fact. While statements made in the pleadings can be construed as admissions of a party, EA does not point to one statement in the pleadings that it believes the District Court overlooked that would reasonably be expected to alter the Order. (App. at 11-15). The District Court confirmed this, writing in its denial of reconsideration that, "EA points to *nothing* in its Rule 56.1 statement that would have altered the Court's ultimate conclusions, instead highlighting only its quarrel with the Court's summary of background facts." (SPA-58 (emphasis added).)

According to EA, the "admissions" that the Court overlooked were citations to academic articles and other evidence attached to the Complaint in which the authors use the term nowcasting generically to apply to different ***methods*** of nowcasting. (App. at 15.) Without citation or support, EA argues that this somehow proves that the Disputed Terms are not generic because "if a term is generic, or even if it is descriptive, it has **one, and only one, meaning**." (*Id.* (emphasis in original).) EA cites to no authority for this proposition because there is nothing in the law or in

logic that would support such a meaning. Indeed, generic terms are not capable of acquiring trademark protection because, as common names of a *class* of goods or services, they simply identify a product or service to the public and to confer protection over them would "grant the owner of the mark a monopoly and prevent a competitor from adequately describing his goods or services." *GMT Prods. v. Cablevision of N.Y.C., Inc.,* 816 F. Supp. 207, 210 (S.D.N.Y. 1993); *see Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 143 (2d Cir. 1997); *Banff, Ltd. v. Federated Dep't Stores, Inc.*, 841 F.2d 486, 489 (2d Cir. 1988). Differently put, a purported trademark is generic and not protectable if it "refers to the genus of which the particular product is a species." *Park `N Fly, Inc. v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194 (1985); *see Courtenay Commc'ns Corp. v. Hall*, 334 F.3d 210, 214 (2d Cir. 2003). In this case, the "genus" is economic predictions of the present. The particular "species" is the various types of nowcasts that can be conducted and the differing methodologies used.[6] As discussed, any variance in methodology is not a basis for protecting generic terms – it reinforces that the terms are generic.

---

[6] Pointing to the different methodologies of different companies that conduct nowcasts, EA argues that the Disputed Terms are not generic because they lack "one, and only one, meaning." (App. at 15.) That flies in the fact of what a generic term inherently is. Here, having a different methodology of conducting a nowcast cannot be a basis for entitlement to trademark protection. As an illustration, the generic term "housekeeping" is the genus that refers to species such as vacuuming, window washing, doing dishes, and dusting. However, an applicant would not be able to obtain a trademark for the generic word "housekeeping" for performing vacuuming and dusting services, on the basis that the underlying cleaning methodologies differ from other housekeeping companies. Likewise, the generic term "clothing" is the genus referring to species such as coats, sweaters, and dresses, yet the word "clothing" cannot be a valid trademark for a provider of dresses

The evidence is unequivocal. Try as it might, EA cannot ignore the mountain of more than 350 (non-exhaustive) references that Now-Casting submitted with its Motion for Summary Judgment illustrating the Disputed Terms being used generically or descriptively, many occurring well before EA began its own use of the Disputed Terms. This evidence also includes examples of generic use of the Disputed Terms other than in academic articles, such as generic use by EA itself and generic use in general press articles, job listings, conferences and seminars, school courses, and other economic companies.[7] (*See e.g.,* SA-1 – SA-100.) It is telling that in *every one* of the numerous articles and sources cited, the terms nowcast or nowcasting are used generically and *not once* to refer to a trademark owned by EA or any trademark over the Disputed Terms more broadly.

None of Now-Casting's allegations in the Complaint come close to raising a triable issue of fact as to whether the Disputed Terms are protectable. Importantly, as the District Court clarified, "EA has the argument backwards" as to who bears the burden. (SPA-41.) "At summary judgment for a declaratory judgment claim for non-infringement where there is no genuine issue of material fact, it is the *defendant* [in

---

simply by having a different means of making dresses. As a final example, the generic term "music" is the genus referring to species such as classical, baroque, jazz, rock, and folk, yet the word "music" cannot be a trademark for a record company producing rock music on the basis it differs from other music.

[7] The Grieco Declaration (A-379-480, ¶¶ 35-75) and the Now-Casting's Rule 56.1 Statement (A-249-408, ¶¶ 50-92)) provide detailed descriptions of the multitude of evidence submitted by Now-Casting. Now-Casting is also providing, in its Supplemental Appendix a few excerpts of the evidence for this Court's easy reference.

this case EA] who must show that its mark is protectable, not the plaintiff who must show that it is not." (SPA-41 - SPA-42 (emphasis added).) Hence, even if the Disputed Terms have varied generic usage, this does nothing to help *EA's burden* to establish its prior use or validity of its claimed trademark – which it undoubtedly failed to satisfy.

Accordingly, the District Court acted properly in its consideration of the parties' Rule 56.1 statements and counterstatements, including EA's citations to the Complaint, in addition to its subsequent grant of summary judgment to Now-Casting. As such, the Order should be affirmed.

C.   The District Court Did Not Err in Holding That There Was no Genuine Issue of Disputed Fact on the Question of Whether EA's Nowcast and Now-Cast Marks are Generic or Merely Descriptive

EA then claims that the District Court erred by placing the burden of proving the underlying substantive claim of infringement on EA. (App. at 16.) Citing *Medtronic, Inc.*, EA argues that even though the relevant claims at issue here are for declaratory judgment, "the burden on summary judgment did not shift, because 'the operation of the Declaratory Judgment Act' is only 'procedural,' leaving 'substantive rights unchanged.'" (*Id*.) EA again misapprehends the law. First, EA incorrectly summarizes *Medtronic, Inc*., writing that it was an "action by patentee for declaratory judgment of non-infringement" and implying that the burden remained with the plaintiff who brought suit (who EA claims was the patent holder).

(*Id*.) *Medtronic, Inc*. was actually a declaratory judgment action brought by the licensee against a patentee, seeking declaration that its medical devices did not infringe patents relating to implantable heart stimulators. *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 191 (2014). Like here, the Supreme Court placed the burden of proof on the patentee, even though it was nominally the defendant, for the declaratory judgment claim between the licensor and licensee. *Id.* at 198. When the Supreme Court observed that "the operation of the Declaratory Judgment Act ... [is] only procedural," the Supreme Court was merely re-emphasizing the well-established principle that the burden of proving infringement does not shift and "should remain with the patentee." *Id*. Indeed, the Supreme Court clarified that "'[T]he burden to prove infringement *never* shifts [to the alleged infringer] if the charge is denied in the plea or answer.'" *Id.* at 198-99 (emphasis added). For these reasons, the District Court properly placed the burden of proving infringement on EA as the declaratory judgment defendant.

EA then, without authority, claims that *Medtronic, Inc*., and the other well-settled cases the District Court cites, should not apply to shift the burden of proving distinctiveness of the Disputed Terms to EA because its alleged trademarks were "previously registered." (App. at 17.) Again, the law is clear that an unregistered trademark carries no presumptions of validity. However, even a trademark registration is not *proof* of validity of a trademark – it merely provides the registrant

with a *presumption* of validity, which presumption "evaporates as soon as evidence of invalidity is presented." *Advance Magazine Publishers, Inc. v. Norris,* 627 F. Supp. 2d 103, 114 fn2 (S.D.N.Y 2008) (internal citations omitted). Here, even if there was a trademark registration in evidence, any presumption was more than rebutted by the vast amount of uncontroverted evidence presented by Now-Casting. Because Now-Casting presented sufficient evidence of invalidity, and EA presented *no* evidence of validity, any presumption EA could have had would have evaporated in any event. (*See, e.g.*, SPA-42 – SPA-43.)

Accordingly, the District Court properly allocated the respective burdens between the parties in deciding the cross-motions for summary judgment and correctly concluded that EA failed to meet its burden.

Finally, as discussed previously, EA failed to dispute *any* of the factual findings of lack of distinctiveness presented in Now-Casting's Rule 56.1 statement. This alone is sufficient for the District Court to have found that EA failed to meet its burden as any factual statements in a Rule 56.1 statement that are not disputed with supporting evidence by the non-moving party are deemed admitted.

### D. The District Court Properly Found That EA Failed to Meet its Burden on Summary Judgment to Show the Existence of a Serious Fact Question as to the Distinctiveness of its NOWCAST and NOW-CAST Marks

EA also disagrees with the Order's conclusion that EA did not meet its burden to show the existence of a question as to the distinctiveness of the mark. (App at 20-

21.) EA again recycles its hopeless argument that, despite the subsequent cancellation of its trademark registrations, it was entitled to a presumption of validity and distinctiveness because it *previously* had trademark registrations. First and foremost, the expired trademark registrations were improperly obtained because EA did not disclose to the trademark office that the Disputed Terms had meaning in the relevant industry or that EA and its founder had used the Disputed Terms generically. (*See, e.g.,* A-386 ¶ 21.) Had the trademark office known that the Disputed Terms are generic terms in the economic industry, EA would *not* have been able to get the now expired trademark registrations and certainly would *not* be entitled to any presumption of distinctiveness of the Disputed Terms in this action.

Setting that aside, as in the District Court, EA again fails to cite any "controlling authority" supporting a presumption of validity for expired trademarks granted *without* a showing of secondary meaning. (*See* SPA-41.) After all, the law is clear that any presumption of validity and distinctiveness afforded to registered trademarks no longer applies to cancelled registrations. *See Advance Mag. Publishers, Inc. v. Norris*, 627 F. Supp. 2d 103, 114 n.2 (S.D.N.Y. 2008) (explaining that the presumption of inherent distinctiveness no longer applies following cancellation);[8] *W.R. Grace & Co. v. Union Carbide Corp.*, 581 F. Supp. 148, 152

---

[8] Tellingly, EA concedes that in *Advance Mag. Publishers* "the defendants were indeed *not* entitled to a presumption of inherent distinctiveness." (Mot. at 20 (emphasis added).) However, EA incorrectly states that the administrative cancellation of the mark in *Advance Mag. Publishers* was

n.7 (S.D.N.Y. 1983) ("Cancellation of plaintiff's mark thus shifts the burden in the infringement action from defendant to plaintiff . . . ."). Notwithstanding, "[t]he presumption of validity that federal registration confers evaporates as soon as evidence of invalidity is presented." *Door Sys., Inc. v. Pro–Line Door Sys.*, Inc., 83 F.3d 169, 172 (7th Cir.1996) (internal citations omitted).

The District Court correctly ruled that EA did not meet its burden to show the existence of a question as to the distinctiveness of the mark because EA was not entitled to a presumption of validity or distinctiveness since its trademark registrations were cancelled. In addition, even assuming EA could have had some presumption of distinctiveness due to its lapsed registrations, any such presumption was conclusively rebutted by evidence of Now-Casting's unchallenged evidence of prior use and the unchallenged evidence that the alleged mark was generic and/or merely descriptive.

As it regards EA's presumption arguments, EA concedes that the District Court addressed the primary cases EA cited on this point, including *Rodgers v. Wright*, 544 F. Supp. 2d 302 (S.D.N.Y. 2008) and *Fusco Group, Inc v. Loss Consultants International, Inc.*, 462 F. Supp. 2d 321 (N.D.N.Y. 2006). (Mot. at 21-

---

"inadvertent." (*Id.*) But, the case is clear that such cancellation was not inadvertent because "Defendants did not file with the USPTO any proof of continued use, or excusable non-use, of the registered mark within the six-year period prescribed by 15 U.S.C. § 1058(a). (Defs.' 56.1 ¶ 65.) As a consequence, the mark was cancelled on April 1, 2006." *Advance Mag. Publishers, Inc.*, 627 F. Supp. 2d at 116.

22.) And, EA further concedes that the District Court also addressed the fact that its trademark registrations were cancelled. Despite acknowledging that the District Court considered both the primary cases EA cited on the issue of distinctiveness of the disputed terms and EA's evidence, it claims that the District Court was incorrect in its assessment of the case law and the evidence.

Try as it might, the cases that EA cites for support (which EA also cited to the District Court in its Motion for Reconsideration) are not contrary to the District Court's holdings. In *Rodgers*, for example, the trademark at issue had been re-registered following its expiration and "defendants…put forward no argument or evidence to rebut the presumption that the mark is therefore not merely descriptive." *Rodgers*, 544 F. Supp. 2d at 306. That was not the case here. Here, EA did not obtain new trademark registrations. And, as explained herein, Now-Casting properly rebutted any possible presumption of validity with undisputed and overwhelming evidence establishing that the relevant public clearly understand that the Disputed Terms are generic or merely descriptive.

And, true to EA's *modus operandi* of distorting its cited cases, *Fusco* does not stand for the far-reaching proposition that a trademark cancellation is of no consequence. In *Fusco*, the trademark was also re-registered prior to the litigation and the court determined that the cancellation was "of no consequence" to the issue of whether the trademark holder could establish prior use when it had also

maintained use of the trademark throughout the period of cancellation. *Fusco Grp.*, 462 F. Supp. 2d at 328-29. *Fusco* does not stand for the proposition that presumptions of validity exist in a cancelled trademark registration. *Fusco* also makes clear that "a trademark is not acquired by registration. Ownership of a trademark stems from prior and appropriate use." *Fusco Grp.*, 462 F. Supp. 2d at 321. Additionally, allowing a trademark registration that was cancelled because the trademark owner failed to properly maintain the registration to carry the same presumption of validity as a registered trademark would render the benefit of a registration moot. This certainly cannot be the law.

Here, not only has EA not obtained new trademark registrations, but also the evidence clearly shows that Now-Casting was the senior user of the Disputed Terms, and EA failed to present any evidence that it was the senior user or that it owned a valid trademark. After all, even though Now-Casting included various statements of undisputed material fact concerning its prior use of the Disputed Terms in its Rule 56.1 statement (*See, e.g.*, A-254 – A-259, ¶¶ 15-18; A-260 - A-261, ¶¶ 24-26), EA did not controvert *any* of these statements in its counterstatement (*see* A-601 - A-602). For example, EA did not deny paragraph 26 in the Now-Casting Rule 56.1 Statement which bluntly states that EA failed to submit any proof of priority:

> EA has not provided any evidence in the record regarding EA's use of the mark "far earlier than the August 29, 2012" date. *See* Grieco Decl. ¶11. In fact, in response to a discovery request asking for evidence of the date EA first

used the Disputed Terms, EA did not produce any documents. *See* Grieco Decl. ¶ 11 and Exs. S001 (Document Request No. 8) and S003, which is a copy of the production log provided by EA wherein it identified which documents were responsive to which requests. A review of the production log (Ex. S003) shows that no documents are identified as responsive to Document Request No. 8.

(A-261, ¶ 26.)

EA tries to salvage its argument by further claiming that, here, "it is undisputed that there was no merits-based or other substantive cause for the administrative cancellation of EA's NOWCAST and NOW-CAST marks." (Mot. at 20-21.) This is not an "undisputed" fact. There are many reasons why a trademark owner might fail to file the required documentation to maintain its registrations. Because there is nothing on the record to support the reason why the registrations were cancelled, EA's proposition is far from an "undisputed" fact. Regardless of the reason the registrations were cancelled, the undisputed fact is that EA had no federal trademark registrations and failed to present evidence that it owned any valid trademarks.

As the District Court posited on reconsideration, EA makes a different request than in summary judgment, which EA again argues here. EA now makes a "separate argument that its cancelled trademark registrations, despite no longer entitling its trademarks to a presumption of validity, still served as evidence of distinctiveness." (SPA-61.) But, as the District Court correctly pointed out, EA "does not cite to any

'controlling authority' that demonstrates that the Court's previous determination was incorrect."[9] (*Id.*)

Accordingly, the District Court correctly concluded that EA did not meet its burden to show the existence of a question as to the distinctiveness of the mark, finding that EA was not entitled to any presumption for its cancelled trademark registration. (*See* SPA-41 ("EA has presented no evidence that the Disputed Terms are sufficiently distinctive to merit protection as unregistered trademarks."); SPA-42 ("This presumption [of distinctiveness], however, no longer applies following the

---

[9] Though not binding, the District Court also did not overlook the Texas case that EA cited in its brief, *Waples-Platter Companies v. Gen. Foods Corp.*, 439 F. Supp. 551, 578 (N.D. Tex. 1977). But EA tried to mislead the District Court about the utility of that case. EA uses *Waples-Platter* to argue that by virtue of having a USPTO registration during the period of infringement that presumption of validity should lead the later cancellation. But, the circumstances in *Waples-Platter* were starkly different. Unlike here, in *Waples-Platter* the mark at issue was registered under 15 U.S.C. § 1052(f), which means that the owner of the mark presented evidence to the USPTO that the mark had acquired distinctiveness and secondary meaning, the USPTO considered such evidence, and granted registration. In this case, the trademark office made no such finding of secondary meaning and, thus, any lasting presumption of validity based on EA's USPTO registration would be improper.

EA also grossly misinterpreted *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.* as holding that "although former owner no longer actually owned a registered mark, it could use prior registration as prima facie evidence of entitlement to the mark." Motion at 8. But, turning to the relevant footnote in the original opinion, it is clear that EA's interpretation was false and misleading. The court did not hold that a prior registration is prima facie evidence once the registration expires. It reads: "[i]t is also undisputed that Majestic's registration of the marks has lapsed. Although prior registrations can serve as prima facie evidence of a party's entitlement to the marks, *Majestic can no longer purport to own a registered mark.* See 15 U.S.C. § 1057(b). Therefore, Section 43(a) applies here." *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 530 (S.D.N.Y. 2012) (emphasis added). This case actually supports the Order because, like here, Majestic owned a registration that it allowed to lapse by failing to file certain paperwork with the USPTO, and the court in that case did not give evidentiary weight to the plaintiff's cancelled registration.

cancellation of EA's registered trademarks."); SPA-43 ("The issue now before the Court is whether EA, no longer entitled to any presumption of validity or distinctiveness, has presented any evidence of the distinctiveness of its marks. It has not.").) For this reason, EA's appeal should be denied and the Order affirmed in its entirety.[10]

E.   The District Court Did Not Overlook Any Material Evidence of Disputed Facts in the Summary Judgment Record in Making its Findings of Fact

EA claims that the District Court overlooked material evidence by "disregarding" its self-serving declaration in which it stated that it was the senior user of the Disputed Terms. (App. at 24.) But, as the District Court further confirmed in denying EA's Motion for Reconsideration, it properly considered EA's self-serving declaration and rejected its arguments after evaluating the contradicting evidence submitted by the parties, including the documentary evidence showing Now-Casting's prior use of the Disputed Terms and the parties' Rule 56.1 statements, which confirmed that EA did *not* dispute that Now-Casting had prior use of the Disputed Terms. (SPA-58 – SPA-59; *see also* SPA-28)

---

[10] EA's continued citation to *Lexington Mgmt. Corp. v. Lexington Capital Partners*, 10 F.Supp.2d 271 (S.D.N.Y. 1998) is troubling as the case has nothing to do with whether a trademark is generic or merely descriptive. Instead, the *Lexington* case deals with a completely unrelated concept of whether a trademark is in a "crowded field." Now-Casting has repeatedly pointed out the inapplicability of this case to the facts at hand, and yet EA continues to cite to it for a proposition for which it does not stand.

The Order is clear that "it is EA that must establish that it was the prior user of a valid mark in order to prevail in opposing Now-Casting's declaratory judgment claim, regardless of Now-Casting's arguments." (SPA-39.) Yet, despite bearing the burden to do so and the Guzman Declaration mentioning supposed "numerous emails" to customers prior to Now-Casting's use, EA failed to provide the District Court with *any* of these alleged "numerous emails" or any other piece of evidence. (SPA-28.) That is because there is *no* evidence of use *prior* to Now-Casting's February 2011 use of the Disputed Terms. (SPA-26, SPA-28.) Indeed, as the District Court stated: EA's trademark registrations "claimed November 27, 2011 as their first use date and January 25, 2012 as their first use in commerce date" – both *after* Now-Casting's documented use. (SPA-27.)

The Appeal points to one email dated December 20, 2011 as its evidence of prior use, Bates numbered EA_330691 (which was before the District Court), which uses Economic Alchemy as a company name and merely makes a reference to a "Nowcast platform." (App. at 25; *see* A-358; SPA-26.) This document fatally undercuts EA's arguments. For starters, it was *Now-Casting*, not EA, that used this document in its Motion for Summary Judgment to show that Now-Casting was the senior user of the Disputed Terms since its own first documented use was in February 2011, and the email referring to be EA was sent 10 months later. EA claims that the District Court "disregarded" this email in assessing its earliest use. Not true.

For one, EA failed to cite to this document anywhere in its summary judgment brief. (SPA-28.) As the District Court explained, "regardless of whether EA produced any material to Now-Casting in discovery, what matters is whether EA cited or produced that material *to the Court* in its summary judgment briefing." (SPA-59 (emphasis in original).)

Telling of EA's concession, EA failed to contest *any* relevant facts in its Rule 56.1 counterstatement, including contesting that Now-Casting is the senior user of the Disputed Terms. (A-241.) As the District Court emphasized, "[t]he Court is not expected to dig through all discovery material, or through all unrelated filings made by the parties, to resolve a motion for summary judgment, hence the need for parties to file thorough Rule 56.1 statements if there is evidentiary material that the party would like the Court to consider, which EA failed to do here." (*Id*.) As such, EA's Rule 56.1 counterstatement failed to establish *any* issue of material fact, let alone any *genuine* issue of material fact that Now-Casting has priority in the Disputed Terms – a condition that required granting summary judgment in Now-Casting's favor.

And, even if EA had cited to its December 2011 email, the District Court made clear that it "would not have changed the outcome of the Court's September 15, 2022 Opinion and Order, as the Court's final analysis did not entail a finding as to prior

use" since Now-Casting's first documented use was in 10 months earlier – in February 2011. (SPA-59.)

EA's self-serving declaration and baseless complaints that the declaration was disregarded cannot save these evidentiary failures.[11] Shockingly, even EA concedes that a court should deny summary judgment to a party where, as here, it relies only on its own testimony which is contradictory and rife with inconsistencies. (App. at 24-25.) That is precisely what the District Court did.

Because the District Court properly considered the evidence before it and addressed EA's arguments with regard to prior use, the District Court did not err in its findings and, therefore, the Order should be affirmed.

F.    Now-Casting is Entitled to Summary Judgment on the Merits Because it Sufficiently Demonstrates That the Disputed Terms Are Generic, or at a Minimum, Merely Descriptive Without Secondary Meaning, and That Now-Casting is the Senior User

There can be no question that Now-Casting is entitled to summary judgment since there is no evidence whatsoever (only mere conjecture) to support EA's theories of the case. In addition to the fatal flaws in EA's arguments explained above,

---

[11] As shown by Now-Casting, EA failed to provide any documents in discovery responsive to a request seeking documents showing first use of EA's alleged trademark (Document Request No. 8). In its Motion for Summary Judgment, EA argued, incorrectly, that EA did produce such documents as shown by the document production log. EA quickly corrected this error, however, by submitting a Notice of Errata (Dkt. No. 218), explaining that the production log referenced documents in response to Interrogatory No. 8 and not Document Request No. 8. Thus, it is undisputed that EA did *not* provide any documents identified as being responsive to Request No. 8 seeking evidence of EA's first use.

EA cannot escape its glaring admissions accepted from its wholly deficient Rule 56.1 statement and counterstatement. As explained above, in the summary judgment submissions to the District Court and here, there is *no* genuine dispute of material fact as to whether the Disputed Terms are generic and/or merely descriptive. It is well-settled that generic terms are not capable of acquiring trademark protection because, as common names of a class of goods or services, they simply identify a product or service to the public and to confer protection over them would "grant the owner of the mark a monopoly and prevent a competitor from adequately describing his goods or services." *GMT Prods.,* 816 F. Supp. at 210; *see Genesee Brewing Co.*, 124 F.3d at 143; *Banff, Ltd.*, 841 F.2d at 489; *Narwood Prods., Inc.*, 541 F. Supp. at 1247.

Because EA did not refute these paragraphs in Now-Casting's Rule 56.1 Statement, the fact that third parties in the relevant industries use the term generically must be accepted as true, Local Rule 56.1(c):

1)      that a nowcast is a prediction of the present (A-268, ¶ 50);

2)      that statistical models that make short-term forecasts of the state of the economy are known as nowcasting models (A-250 – A-251, ¶ 4);

3)      that EA is in the business of offering economic forecasts and predictions (A-260, ¶ 20); EA uses the Disputed Terms for economic research services that provide economic predictions (A-260, ¶ 23);

4)      that the genus of the services in this matter is economic research services that provide economic predictions (A-273, ¶ 65);

5) the relevant public includes economists, financial analysts, scholars, and industry professionals (A-273, ¶ 66); and

6) all of the communications with customers or potential customers produced by EA are those in the investment and financial industries (A-262, ¶ 29).

Therefore, Now-Casting is entitled to summary judgment because there is no dispute between the parties that generic marks are not entitled to trademark protection.

It is also apparent from the voluminous evidence Now-Casting submitted with its Motion for Summary Judgment, and uncontradicted by EA, that the widespread *generic* use of the Disputed Terms among the relevant public and even by EA and its own founder demonstrates that the Disputed Terms are generic and incapable of acquiring any trademark protection. (A-270 – A-352, ¶¶ 59-63, 64, 67-92.)

Further, even if the Disputed Terms were not generic, EA did *not* dispute that the terms are merely descriptive, and a merely descriptive term cannot acquire any trademark significance without substantial evidence of secondary meaning. (A-352, ¶¶ 93-94) And, EA still fails to provide *any* evidence of secondary meaning.

EA also admitted that Now-Casting was the senior user of the Disputed Terms by failing to dispute Now-Casting's facts to that effect. (A-255, 18; A-265, ¶ 38). A party claiming trademark rights in a term has the burden to present evidence that establishes the claimed first use date. *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of New Jersey*, 894 F. Supp. 2d 288, 308 (S.D.N.Y. 2012), *as amended* (Sept. 19, 2012); *Excelled Sheepskin & Leather Coat Corp. v. Oregon*

*Brewing Co.*, 897 F.3d 413, 417 (2d Cir. 2018). For this reason, prior use is a defense to trademark infringement. *See Martha Graham Sch. & Dance Found., Inc. v. Martha Graham Ctr. of Contemp. Dance, Inc.*, 153 F. Supp. 2d 512, 525 (S.D.N.Y. 2001), *aff'd*, 43 F. App'x 408 (2d Cir. 2002) (finding in favor of a dance foundation defendant in the infringement action, who successfully asserted the affirmative defense that it was the senior user of service mark "Martha Graham," by virtue of assignment and use of publicity rights which occurred prior in time to rights of the mark's registrant). Again, even the documentary evidence supports that it was Now-Casting who began using the Disputed Terms before EA. (A-255, 18; A-265, ¶ 38).

Ultimately, EA's beliefs, unsupported by admissible evidence, are insufficient to sustain its case. Given these failures of proof, summary judgment was appropriately granted to Now-Casting and appropriately denied to the EA. Accordingly, the Order should be affirmed.

## CONCLUSION

For the foregoing reasons, the District Court properly granted summary judgment in favor of Now-Casting on all claims, and against EA. Accordingly, Now-Casting respectfully requests that the judgment of the District Court be affirmed in its entirety.

Dated: January 12, 2024

New York, New York

OLSHAN FROME WOLOSKY LLP

By: /s/ *Katherine E. Mateo*
Katherine E. Mateo
Brian A. Katz
Mary L. Grieco
1325 Avenue of the Americas
New York, New York 10019
(212) 451-2300

*Attorneys for Plaintiff-Appellant*
*Now-Casting Economics,*
*Ltd.*

12276173-8

# CERTIFICATE OF COMPLIANCE

I hereby certify that:

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7) because it contains 9,853 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Dated: January 12, 2024

/s/ *Katherine E. Mateo*
KATHERINE E. MATEO

12276173-8

# CERTIFICATE OF SERVICE

I, KATHERINE E. MATEO, hereby certify that on January 12th, 2024 I caused true and correct copies of the foregoing document to be served on all parties to this appeal by ECF. I also caused a hard copy of the foregoing to be served on the parties to this appeal at the addresses below:

Ronald D. Coleman
DHILLON LAW GROUP, INC.
50 Park Place, Suite 1105
Newark, NJ 07102
(973) 298-1723
rcoleman@dhillonlaw.com
*Counsel for EA*
*Economic Alchemy LLC*

Jeremy M. Bylund
KING & SPALDING LLP
1700 Pennsylvania Avenue NW
Washington, DC 20006
(202) 737-0500
jbylund@kslaw.com
*Counsel for Appellees Federal Reserve Bank*
*of New York, Federal Reserve Bank of San*
*Francisco, Federal Reserve Bank of Chicago,*
*Federal Reserve Bank of Philadelphia,*
*Federal Reserve Bank of Boston, Federal*
*Reserve Bank of Atlanta, Federal Reserve*
*Bank of Minneapolis, Federal Reserve Bank*
*of Dallas, Federal Reserve Bank of Richmond,*
*Federal Reserve Bank of Kansas City, Federal*
*Reserve Bank of Cleveland, Federal Reserve*
*Bank of St. Louis*

/s/ *Katherine E. Mateo*
KATHERINE E. MATEO

12276173-8