# 23-947-CV

―――――――――――――――――――

## United States Court of Appeals
### For the Second Circuit

―――――――――――――――――――

NOW-CASTING ECONOMICS, LTD.,

                                            *Plaintiff-Appellee,*

*v.*

ECONOMIC ALCHEMY LLC,

                                            *Defendant-Appellant.*

―――――――――――――――――――

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――

**REPLY BRIEF OF APPELLANT ECONOMIC ALCHEMY LLC**

―――――――――――――――――――

Ronald D. Coleman
DHILLON LAW GROUP, INC.
50 Park Place, Suite 1105
Newark, NJ 07102
973-298-1723
rcoleman@dhillonlaw.com
*Attorneys for Appellant
Economic Alchemy LLC*

## CONTENTS

AUTHORITIES .................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................1

I.  REPLY ARGUMENT ................................................................................1

   1)  The district court's reliance on supposed "dictionary definitions" of NOWCAST/NOW-CAST as a ground for granting summary judgment was improper. ...............................................................................................................1

   2)  The quasi-academic papers submitted by Plaintiff are not probative on the issue of trademark use. ......................................................................................................6

CONCLUSION ...............................................................................................13

# AUTHORITIES

**Cases**

*DeMarco v. Lehman Bros. Inc.*, No. 03 CIV. 3470 (JSR), 2004 WL 2674611
 (S.D.N.Y. Nov. 23, 2004)..................................................................................10

*Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515 (S.D.N.Y. 2018) ................3

*In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34 (1st Cir. 2016)...........11

*Mantel v. Microsoft Corp.*, No. 16-CV-5277 (AJN), 2019 WL 367823 (S.D.N.Y.
 Jan. 30, 2019)......................................................................................................3

*Raskin v. Wyatt Co.,* 125 F.3d 55 (2d Cir.1997).......................................................7

*Schneider v. Revici,* 817 F.2d 987 (2d Cir.1987).....................................................6

*Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295 (5th Cir. 1985) ................5

*TE-TA-MA Truth Found.--Fam. of URI, Inc. v. World Church of Creator*, 297
 F.3d 662 (7th Cir. 2002) .....................................................................................2

**Rules**

Fed. R. Evid. 803(18) Advisory Committee Note ....................................................6

**Treatises**

4 *Callmann on Unfair Comp., Tr. & Mono.* (4th ed.) § 18:5....................................2

# PRELIMINARY STATEMENT

The opposition briefs submitted by Appellees do not adequately rebut the legal and procedural arguments set forth in Appellant's Opening Brief. It is necessary, however, to use the opportunity of reply to address Plaintiff-Appellee's insistence – embodied by its Supplemental Appendix – that what it cannot prove in substance, it can make up for in volume.

Though it has often been said that equity acts to "soften the rigor" of law, there is no equity in depriving a litigant of its day in court, as the district court did here, by blindly accepting vague generalizations that appear from a distance to be supported by collations of redundant Internet searches masquerading as "dictionary definitions" and "academic papers." As set forth below, Plaintiff's submissions are neither of these, and the district court erred.

## I. REPLY ARGUMENT

**1) The district court's reliance on supposed "dictionary definitions" of NOWCAST/NOW-CAST as a ground for granting summary judgment was improper.**

As Appellant has already argued, it was error for the district court to rely, which it did, on what it vaguely referred to as "dictionary definitions" in rejecting Appellant's trademark claim. See, *TE-TA-MA Truth Found.--Fam. of URI, Inc. v. World Church of Creator*, 297 F.3d 662, 666 (7th Cir. 2002) (reversing finding of

1

genericness where defendant "did not offer any evidence about how [people in the relevant market] use or understand the phrase as a unit. It offered only lexicographers' definitions of the individual words. That won't cut the mustard, because dictionaries reveal a range of historical meanings rather than how people use a particular phrase in contemporary culture"). *Accord*, 4 *Callmann on Unfair Comp., Tr. & Mono.* (4th ed.) § 18:5 ("Use in a non-mark sense in publications is some evidence of non-distinctiveness, but the weight of such evidence is limited by the fact that publications are not always cognizant of nor careful about proper trademark usage, and certainly a writer's perception of whether a term is descriptive or a trademark is not binding"; internal quotes and citations omitted).

But besides this, and contrary to the suggestion by Plaintiff-Appellee, nothing in the record contradicts Appellant's assertion that the formative NOWCAST/NOW-CAST does not appear in **any** standard English dictionary – a powerful refutation of **both** of the claims made by Plaintiff-Appellee that the term generic and therefore not capable of trademark meaning. Plaintiff-Appellee nonetheless relies heavily on what it characterizes as "dictionary definitions" of the formative NOWCAST/NOW-CAST – "definitions" which, as Appellant observed at summary judgment, should not even have been considered by the court below. Similarly, Plaintiff-Appellee claims that it "has found at least three dictionary definitions of the term nowcast as applied to economics and finance –

2

all of which generally define the term as a prediction of the present." These were not produced during discovery, however, and should not have been considered by the district court. See, e.g., *Ferdman v. CBS Interactive Inc.*, 342 F. Supp. 3d 515, 528 (S.D.N.Y. 2018) ("Plaintiff's argument that Defendant could have obtained copies from the Copyright Office does not address why Plaintiff did not produce the requested materials during discovery"); *Mantel v. Microsoft Corp.*, No. 16-CV-5277 (AJN), 2019 WL 367823, at *1 (S.D.N.Y. Jan. 30, 2019) ("the Court excluded the evidence because neither the documents nor the information within had been produced in discovery"). Furthermore, at no juncture during the summary judgment briefing was the district court asked to take judicial notice of these materials.

Plaintiff-Appellee's description of these as "dictionary definitions", in any event, can only be charitably described as misguided. They are, in fact, flat-footed misrepresentation.

First, at SA-11, Plaintiff-Appellee refers the Court to an online word game site, evidently relied on by the district court, called "Word Finder," which is not a dictionary. Located at the URL https://findwords.info, Word Finder describes itself as follows: "Are you one of those people who prefer intellectual puzzles to video games? If it is so, the site Word Finder is the right place for you as it has been designed for creative people … Schoolchildren, students of philology,

3

foreigners and just people who like word games, solving crossword puzzles and word search by letters will find this site useful."[1] Word games are not dictionaries, however, and a federal circuit court is not the place for word games.

Similarly, Plaintiff-Appellee repeats its reference, also made to the district court, to a definition in what it claims is the "Macmillan Dictionary" at SA-13. But SA-13 does not refer to a dictionary either. The link provided by plaintiff actually re-directs to https://macmillaneducation.my.salesforce-sites.com/help/ from a now-defunct 2016 blog post about "'buzzwords' that might bear watching". If the term "nowcast"/"now-cast" did, in fact, appear in the actual MacMillan English dictionary, the Court can be confident that plaintiff would have cited such use.

As Appellant observed in its summary judgment brief, that entry was based on **two** obscure uses of the term from 2016. While "[d]ictionaries lag behind

---

[1] Appellant also noted in its brief opposing summary judgment that a "Buzzword article" is described (emphasis added) as follows by the Macmillan website:

> The Macmillan Dictionary BuzzWord **may not be a word you'll find in any dictionary**, and it's not always a brand-new term either: it may be a new way of using an existing word (e.g. Goldilocks, swipe), or a new way of putting words together (e.g. reacji, cobot). However and whatever reason it came to be, the BuzzWord is a word that is current and in sudden or increasing use – it might not stay around forever, but it's worth knowing what it means and how people are using it today.

*See*, https://www.macmillandictionary.com/buzzword/index.html (last visited December 12, 2021).

linguistic realities," *Sec. Ctr., Ltd. v. First Nat. Sec. Centers*, 750 F.2d 1295, 1298 (5th Cir. 1985), since that time the term plaintiff claims is generic has not appeared in any better-known reference works, or any more current one, than these.

A third example of something characterized by Plaintiff as a "dictionary" is something called the "Similarweb Blog," cited by Plaintiff-Appellee at SA-15. Plaintiff demonstrated no grounds for either the district court or this Court to treat this blog as authoritative in any way, especially considering that the blog itself disclaims any authority or accuracy. The district court erred by doing so in order to reach its conclusion that as a matter of law there was no bona fide factual dispute concerning Appellant's trademark rights in the NOWCAST/NOW-CAST formative. The district court did so even though the USPTO allowed Appellant's application to register the NOWCAST/NOW-CAST marks and, that on virtually the same record, Appellant overcame an opposition in the TTAB by the same parties and on the same grounds.

In fact, the term "nowcast"/"now-cast" does **not** appear in any legitimate dictionary, as Appellant demonstrated in discovery and in the previous TTAB proceedings. The district court, however, improperly made credibility determinations about what was and was not produced in discovery on the basis of Plaintiff's misrepresentations, as set forth in Appellant's Opening Brief.

### 2) The quasi-academic papers submitted by Plaintiff are not probative on the issue of trademark use.

Rule 803(18) explicitly requires trial judges to act as gatekeepers, ensuring that learned treatises are "authoritative." *Schneider v. Revici,* 817 F.2d 987, 991 (2d Cir.1987). Under this rule, the court must determine that proffered academic material is "trustworth[y] ... as viewed by professionals in [the relevant] field." *Id.; see* Fed. R. Evid. 803(18) Advisory Committee Note. The extent to which the district court considered these materials is not addressed in its summary judgment opinion, which in and of itself is problematic, because a party seeking summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact by coming forth with **admissible** evidence. *Raskin v. Wyatt Co.,* 125 F.3d 55, 66 (2d Cir.1997). It is far from clear what distinctions the district court made among the vast amount of materials submitted by Plaintiff in support of summary judgment, most of which comprised these mounds of inadmissible hearsay.

For purposes of this appeal, however, Plaintiff-Appellee has accomplished nothing by dumping its raft of cumulative, non-probative materials on the Court in its Supplemental Appendix. Besides being cumulative, and not having been cited specifically by the district court in its opinion, they suffer from numerous deficiencies as proof of anything here: They establish no coherent definition of what the term "nowcast"/"now-cast" means; virtually *none* of them is a peer-

reviewed publication; and the majority of them were generated by Plaintiff or those associated with Plaintiff itself, or are directly derivative of such Plaintiff-generated material.

As Appellant observed below, these papers all define the term "nowcast"/"now-cast" differently from one another, and claim a wide variety of purported relationships with the concept of time, i.e., past, present and future. Some describe "nowcast"/"now-cast" as an estimate; some describe it as an opinion; some describe it as a quantitative model; and others describe it as a qualitative model. The district court's opinion failed to address these numerous contradictions of meaning, and Plaintiff-Appellee fails to do so here, as well.

For example, the purported exemplar of use at SA-43 offers a definition of "nowcast" as something integrated into something else called the BlackRock Macro GPS, a "tool [that] exploits more sources of information and is timelier than traditional gauges, with the aim to show where **12-month forward consensus GDP forecasts** may stand **in three months'** time." (emphasis added), The exemplar found at SA-45 defines a "nowcast" as a "forecast," and sets the term off in quotation marks, stating, "At the turn of the year, there were **forecasts** of global recession in 2016. At the low point for activity and risk assets in 2016 Q1, the global growth rate (according to the Fulcrum 'nowcasts') had dipped to about 2 per cent…" (emphasis added). Plaintiff's SA-48 vaguely asserts that

7

"Nowcasting . . . is a **process of measuring** what's happening in the economy today, or in the very near past or future . . . " (emphasis added). The publication found at SA-37 informs readers that a "nowcast" is a "necessary [*sic*] **projection** of current GDP" (emphasis added). For its part, the article at SA-76 links to a webpage for a conference where "nowcasting" was to be discussed, that states, "The goal of this event is to explore the **use of big data to generate high-frequency** [*sic*] **inflation forecasts**" (emphasis added), switching the definition from something related to GDP to something related to inflation.

According to the source found at SA-42, a "nowcast" is, or are, "**economic diagnostics** which will answer the question of what is happening in the economy now. This is what is known in the literature as nowcasting" (emphasis added). Not all of the "literature," however; as demonstrated by the fact that for The World Bank, in Exhibit K-025 (SA-60) the future is now: a "nowcast" is nothing more or less than a forecast, projecting data out several years. The piece at SA-72 claims "Nowcasting in Economics refers to the **practice of monitoring** the state of an economy" (emphasis added). A **practice**, of course, is not the same as what the article found at SA-45 called a **process**; **monitoring** is not the same what the latter "paper" called **measuring**; Plaintiff's SA-42 said it was a "**diagnostic**"; and none of these is a **method**, although the piece at SA-80 describes it as just that, while claiming it is also something that can "be used to obtain **short-term**

8

**forecasts**" (emphasis added). None of this is the same as evidence showing a lack of trademark meaning.

Furthermore, and relatedly, the forest of what Plaintiff vaguely refers to as "papers" comprising most of its Supplemental Appendix are **working papers** – in many cases, only partial working papers – which are not authenticated, not peer-reviewed, not published in any journals, and are riddled with disclaimers by the authors and institutions in whose authority Plaintiff-Appellee wishes to wrap itself. This is nothing more than a work-around for Plaintiff's failure to make use of any of the three extensively flawed "expert reports" it served on Appellant – necessitating significant expenditures arising from the need to analyze and rebut those reports, prepare to depose Plaintiff's unqualified experts, and from Plaintiff's torturous, extensive and unnecessarily long deposition of Appellant's own rebuttal expert, a Nobel Laureate in economics, who told them things they did not want to hear – by simply dumping into the record the dross it would have included under the rubric of "materials relied upon" by its own opinion witnesses. This Court, in *DeMarco v. Lehman Bros. Inc.*, No. 03 CIV. 3470 (JSR), 2004 WL 2674611, at *2 (S.D.N.Y. Nov. 23, 2004), rejected a nearly identical ploy:

> At the time of the class certification motion, plaintiffs attempted to meet this burden primarily on the basis of an expert's report that the Court found woefully inadequate. Plaintiffs then attempted to resurrect their class action by procuring a new expert report designed to try to overcome the deficiencies in the original report, but the Court denied that motion as well. *See* Order, September 19, 2004.

9

> Plaintiffs now take still another stab at this approach by including in their newest summary judgment papers certain unpublished working papers and other academic articles on which their expert relied in preparing his revised report. However, even aside from the fact that this is an obvious ploy to try to undercut the Court's prior ruling that the revised expert report would not be received, in the absence of any such report the submitted papers and articles are inadmissible hearsay and therefore may not be considered on summary judgment.

2004 WL 2674611 at *2. The district court should have done the same here, but instead erred and made no ruling concerning Appellant's objections to the submission of these materials on summary judgment. These materials should never have been part of the summary judgment record, because with or without expert testimony, these "discussion papers," "working papers" and other assorted quasi-academic doodles simply do not qualify as academic materials. See, *In re Nexium (Esomeprazole) Antitrust Litig.*, 842 F.3d 34, 52 (1st Cir. 2016) (no abuse of discretion in excluding expert testimony based only on "unpublished, non-peer-reviewed working paper").

By this error, moreover, the Court undercut its own prior ruling, wherein Judge Ramos found these voluminous materials insufficient to overcome the presumption of validity of Appellant's NOWCAST/NOW-CAST marks. This was arguably law of the case. Beyond this, the lack of rigor demonstrated by these casually, self-published, unvetted, and unedited materials correlates highly with the inconsistency of terminology they use – especially the terminology in question. Thus, the aforementioned publication found at SA-48, which had

defined "nowcasting" as "a process of measuring what's happening in the economy today, or in the very near past or future," is diametrically opposed to Exhibit K-025 (SA-60) which states in a footnote that "2017 is the last year with official global poverty estimates," but makes estimates going out to 2021. Projecting from 2017 to 2021, however, is not "today, or in the very near past or future" – a gross error of both definition and logic in this blog post that would surely not survive the rigor of peer review.

      These informal musings are, unsurprisingly therefore, surrounded by hedges and disclaimers. Plaintiff's SA-32, a paper written in Belgium "on the basis of work performed under study contract …," states, "Nowcasting regards the inference on the present realization of random variables, on the basis of information available until a recent past." At SA-42 Plaintiff asks the Court to credit a German "Discussion Paper" that comes with the disclaimer, "Any opinions expressed here are those of the author(s)" and not those of any institution" and purports to define "nowcasting" as "what is happening in the economy now" – a definition so amorphous that, like many of the "definitions" proffered above, it raises the question of why a new word should be coined merely to describe what is happening. An even more inscrutable purported definition is found at SA-80, a article that proposes to "present an overview of big data, machine learning and natural language processing techniques applied to SDG

11

nowcasting. We provide a use case which uses taxonomies associated with the UN SDGs to nowcast the SDG footprint of companies and countries using large-scale unstructured data," having nothing to do with forecasts of either GDP or inflation – notwithstanding other "definitions" submitted by Plaintiff – but, rather, the "SDC footprint of companies and countries" through the use of taxonomies.

Another article, found at SA-37 and also from Germany, offers an utterly unrelated definition, describing a "nowcast" as "the necessary projection of current GDP" and setting forth, in a disclaimer (SA-34), that it is merely a "Discussion Paper" which "represent the authors' personal opinions and do not necessarily reflect the views of the Deutsche Bundesbank or its staff." The paper, moreover, offers a hat tip to Plaintiff's co-founder Giannone and borrows the definition of the term from him, used in quotes nonetheless. Meanwhile, the piece at SA-42 erroneously credits Plaintiff's co-founder Giannone with being the first to use the term in economics in a 2008 paper – a claim ironically refuted by Plaintiff-Appellee's own pleadings in this matter, including its opposition brief in this matter.[2] The publication at SA-43 was authored by Blackrock's Jean Boivin, a former colleague of Plaintiff's co-founders Giannone and Reichlin, all three of whom were previously affiliated with Appellee the Federal Reserve Bank of New York. Similarly, the paper found at SA-77 comes from an event co-sponsored by

---

[2] See, for example, the article at SA-32, a 2003 paper.

the Federal Reserve Bank of New York, an Appellee here and a Plaintiff in the related TTAB proceedings, which, as it shows, featured a presentation on "Nowcasting" by Lucrezia Reichlin, a co-founder of Plaintiff. Numerous other examples of "third-party use" – not one of which constitutes trademark use – in the Supplemental Appendix are also products manufactured by Plaintiff's circle of co-venturers and interested parties.

The limitations of space prevent Appellant from addressing the remaining inconsistencies, both internal and otherwise – including materials that do not even purport to be academic work – that constitute the Internet flotsam, complete with anonymous tweets and all, that is the Supplemental Appendix. If the district court was impressed by these submissions, this Court should not be. They are not probative of what Plaintiff-Appellee says they are, and its resort to volume to make up for the lack of substance should not be sufficient to deprive Appellant of the opportunity to prove its trademark rights at trial.

## CONCLUSION

For the foregoing reasons, the Court should reverse the order of the district court granting summary judgment to Plaintiff and remand this case for trial.

DHILLON LAW GROUP, INC.

By: */s/ Ronald D. Coleman*
 Ronald D. Coleman

13

50 Park Place, Suite 1105  
Newark, NJ 07102  
973-298-1723  
[rcoleman@dhillonlaw.com](mailto:rcoleman@dhillonlaw.com)  
*Attorneys for Defendant-Appellant  
Economic Alchemy LLC*

Dated: February 13, 2024